## UNITED STATES v. E. I. DU PONT DE NEMOURS & CO. et al.

### Petition of HERCULES POWDER CO.

(District Court, D. Delaware.  May 4, 1921.)

### No. 280.

1. **Equity ⬥⇒429—Modification of decree within jurisdiction of court.**

A court of equity, which entered a decree in a suit brought by the United States under Sherman Anti-Trust Act July 2, 1890, § 4 (Comp. St. § 8823), for dissolution of a combination as in restraint of trade, by which decree it authorized the creation of two new corporations to take over certain of the business of the combination to insure competition, making such corporations parties to the decree, and retaining jurisdiction "for the purpose of making such other and further orders and decrees as may become necessary for carrying out the plan herein set forth," *held* to have power to modify the decree on petition of one of such corporations as affecting that corporation, where no revision is made on the merits or with respect to any defendant concluded thereby, but where the modification is consistent with the purpose for which jurisdiction was reserved.

2. **Monopolies ⬥⇒26(1)—Petition by corporation created pursuant to decree dissolving combination to construe or modify decree held appropriate procedure.**

Where a decree dissolving a combination as in restraint of trade required the creation of two new corporations to take over and operate certain plants of the combination, to insure and maintain competition, making them parties to the decree, one of such corporations, desiring to purchase certain additional plants, *held* to have properly applied to the court for a construction of the decree or its modification, if necessary, to permit the purchase.

In Equity.  Suit by the United States against E. I. Du Pont de Nemours & Co. and others.  On petition of the Hercules Powder Company, and motion to dismiss the same.  Motion to dismiss overruled, and petition granted.

For prior opinion, see 188 Fed. 127.

Robert H. Richards, of Wilmington, Del., and J. Harry Covington and Edward B. Burling, both of Washington, D. C., for petitioner.

Henry S. Mitchell, of Washington, D. C., Sp. Asst. Atty. Gen., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.  Hercules Powder Company asks the court to modify the final decree in United States v. E. I. Du Pont de Nemours & Co. (C. C.) 188 Fed. 127, in a manner that will permit it to acquire the physical properties and other assets of the Ætna Explosives Company, Inc.  The unusual character of this petition arises out of the unusual plan adopted by this court to effect the separation and thereafter to maintain the disassociation of a number of explosives companies found to comprise a combination in violation of the Sherman Anti-Trust Law.  Act of July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. §§ 8820–8823, 8827–8830).

---

In order to distinguish an application which upon first view would seem to lack jurisdictional warrant from one that may in the circumstances be entirely valid, it becomes necessary first to examine the decree sought to be modified and then to consider the reasons advanced for its modification. To this end, we shall give in outline only so much of the decree in the Du Pont Case and of the elaborate record made upon the petition of the Hercules Powder Company as will bring to view the matter on which we think the case turns and will show the reason for our judgment.

Shortly stated, the District Court of the United States for the District of Delaware, on June 13, 1912, entered a final decree in an action brought by the United States against forty parties, personal and corporate, for forming and maintaining an unlawful combination in restraint of interstate commerce. United States v. E. I. Du Pont de Nemours & Co. et al. (C. C.) 188 Fed. 127. The court, finding a combination and monopoly comprising twenty-seven of the defendants, nine of whom were corporations engaged in the manufacture of explosives, decreed its dissolution. At the time of the decree the Du Pont Company owned or by stock ownership controlled over forty plants for the manufacture of dynamite, black blasting powder, black sporting powder, smokeless sporting powder and government smokeless powder, so distributed throughout the United States as to cover every field of consumption and to restrain competition therein. In order to dissolve this combination and take away its control of the industry without at the same time confiscating or destroying the property of its owners, the court in its plan of dissolution conceived the idea of breaking up the combination and restoring competition by establishing two entirely new explosives corporations adequately equipped with plants strategically distributed with reference to competitive conditions. The theory of distribution which the court evolved for breaking the control of the combination is clear only to those familiar with the explosives industry. In order to understand this quite relevant matter it becomes necessary to digress for a moment.

The explosives industry is divided into two fields; that of production and that of consumption. The highly dangerous character of the product is a controlling factor in its movement from one field to the other. Aside from the factor of danger there also enters the economic element of cost. Sales prices in the explosives industry are, because of the nature of the product, arrived at on a basis precisely opposite from that which prevails in almost every other industry. In an ordinary business sales prices are based primarily on cost prices, and in almost every business cost prices are kept down by locating the producing plant at a point as near as practicable to the source of power or of raw material. This is due to the fact that ordinarily freight charges on fuel and raw materials are greater in the aggregate than on finished products. In the explosives industry, however, freight charges on raw materials are inconsiderable in comparison with freight charges on the finished product. The reason for this is obvious. Hence there arises the necessity of making dynamite and blasting powder as near

points of consumption as is possible and of having as many plants as there are areas to be served.

The field of competition of an explosives plant is coextensive with its trade. Trade of a given plant spreads in all directions toward its nearest competitors until points are reached where prohibitive traffic charges transform profits into losses. There the trade of that plant stops and competition ends. Beyond, trade and competition are taken up and carried on by other plants advantageously located with reference to freight rates until in turn their trade and competition dwindle and finally end for the same reason. It thus appears that control of the explosives industry is not gauged so much by the size and number of plants as by their distribution in regions of consumption. In other words, control of the industry is not so much numerical as it is territorial.

Returning to the decree, the court, having this basic fact in mind, attacked the defendant combination in its geographical control by causing to be brought into existence the two corporations referred to, one the Hercules Powder Company, the present petitioner, the other the Atlas Powder Company, and by decreeing that of the many widely distributed plants of the combination three dynamite plants situated respectively in New Jersey, Michigan and California, seven black blasting powder plants situated respectively in New York, Pennsylvania, Ohio, Wisconsin, Kansas and California, and two black sporting powder plants situated respectively in Connecticut and New York, should be transferred and conveyed to the Hercules Powder Company. It was likewise decreed that conveyance of other plants of the combination, varying in number and location, should be made to the Atlas Powder Company. The Du Pont Company was then permitted to retain its remaining plants which, in the scheme of things, were located in states where it was arranged the two new corporations should enter and become its principal competitors. That these two artificially created competitors should be potential in competition and thereby effective in carrying out the court's scheme of re-establishing competition in the explosives industry, the decree further provided that the Du Pont Company should not only give to them the plants in the number and regions prescribed but it should equip them with ample capital, man them with experts and officials equal to its own, and supply them initially with business.

The stock of these corporations was issued to stockholders of the companies out of whose properties they were capitalized, with certain limitations as to voting power, upon the theory that in time—as was later justified by events—stock ownership of the new corporations would pass into other hands.

In formulating this plan the court expressly made the newly created corporations "parties to this cause and subject to the provisions of this decree and bound by the injunctions herein granted," and by another provision of the decree retained jurisdiction of the cause "for the purpose of making such other and further orders and decrees as may become necessary for carrying out the plan herein set forth."

The Hercules Powder Company, by the petition now before the

court, represents that it has contracted to purchase from the Ætna Explosives Company, Inc., its physical properties and other assets, comprising technically five, but geographically considered four, dynamite plants, two blasting powder plants, and plants for the manufacture of blasting caps and their ingredients, located in various regions of consumption where in some of them competition with the Hercules Powder Company, though present, is inconsiderable, and in others where there is no competition at all, and asks the court whether the consummation of the proposed transaction of purchase would be in violation of its final decree in the Du Pont Case, either in spirit, language, or the particular purpose for which it, the Hercules Powder Company, was made a party, and prays the court so to modify its decree as to permit such acquisition.

To distinguish this case from others—Central West Publishing Company, American Press Association and Western Newspaper Union v. United States, 245 Fed. 91, 157 C. C. A. 387, L. R. A. 1918A, 1039; Petition of Moon-Hopkins Billing Machine Co., United States v. Burroughs Adding Machine Co. (oral opinion, District Court for the Eastern District of Michigan, decided March 3, 1913)—it should first be noted that neither the Ætna Explosives Company nor the Hercules Powder Company was a party to the action against the combination found unlawful. Although the Hercules Powder Company became a party to the court's decree and is bound by its injunctions, this is so by reason of the circumstances recited, not because of wrongdoing on its part. It should also be noted that if the prayer of the petition of the Hercules Powder Company be granted it will not change any term or provision of the final decree as it bears on the issues decided or on the parties concluded thereby. We are therefore presently concerned with the decree only as it affects the Hercules Powder Company and with the proposed transaction only as it affects the decree.

The United States moves to dismiss the petition upon several grounds, the one which we regard as the most important being:

"For lack of jurisdiction in a suit in equity under the Sherman Anti-Trust Act of July 2, 1890. (26 Stat. 209), to make orders and decrees other than to prevent and restrain violations of the said Act."

For support of this proposition the United States cites section 4 of the Sherman Act (Comp. St. § 8823), vesting the several Circuit Courts "with jurisdiction to prevent and restrain violations of this Act," and maintains that Congress thereby limited the jurisdiction of the courts to the entry of decrees to that end, and therefore (as urged by the second ground of its motion) the court lacks "jurisdiction after the entry of the final decree in a suit to make any further orders or decrees not necessary to carry out the provisions or plan of the said final decree."

The United States, by its interpretation of the petition in its third ground, further challenges the action of the court:

"For lack of jurisdiction in equity to make a decree or order declaring, in advance of a proposed transaction, that such transaction will not be in violation of a decree of the court."

These several grounds are so closely related that we may view them together, discussing them in reverse order.

[1] Addressing ourselves to the third ground on which the motion to dismiss is based, we hasten to say, that if there were nothing more in the case than an endeavor by a party to obtain an order declaring in advance that a proposed transaction would not violate the decree, the court would have no jurisdiction to make such order. But we are confronted with a different situation in which we think the jurisdiction of this court is not limited to the making of decrees initially to prevent and restrain violations of the Anti-Trust Act, but extends upon proper occasion to the modification of decrees looking to the continued prevention and restraint of violations. United States v. United States Steel Corporation (D. C.) 223 Fed. 55, 161; United States v. Keystone Watch Case Co. (D. C.) 218 Fed. 502, 509. This may the more readily be done where, as here, the modification proposed does not call for revision of the decree on the merits, or against any person concluded thereby. The matter now before the court involves only a modification of the decree as it affects a party not sued but created and brought into the decree merely as an instrument to carry out its purpose. By retaining jurisdiction of the case the court retains control over its decree for the purpose of making it certain that dissolution is effected and competition restored and, under varying conditions, that competition is maintained. Further action upon a decree, such as that now invoked, is but the exercise of the usual powers of a court of equity to make its enforcement conform to conditions. United States v. United States Steel Corporation, 251 U. S. 417, 452, 40 Sup. Ct. 293, 64 L. Ed. 343, 8 A. L. R. 1121; Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123; Gardner v. Dering, 2 Edw. Ch. (N. Y.) 133.

[2] The capital idea of the final decree is, as we have seen, the creation and thereafter the competitive operation of two new industrial units. One of them, the Hercules Powder Company, now seeks to expand its business. It feels that it cannot do this by acquiring new plants in new territories without hazarding offense against the decree by appearing, at least, to disturb that plan of competitive trade intended in the decree to be brought about and maintained by the distribution of its plants in regions of consumption theretofore served only, or mainly, by plants of the Du Pont Company. The question therefore is resolved to this: Whether it is permissible under the decree in the Du Pont Case for the Hercules Powder Company to expand in substantial measure and whether this court has jurisdiction to say so.

The decree which brought forth the Hercules Powder Company immediately subjected it to all of its injunctions. The main note running through these injunctions, however termed and to whomever directed, was against conduct "the effect of which is or *will be* to restrain interstate commerce in explosives." Manifestly this does not mean restraint of interstate commerce in explosives in any degree or the lessening of competition in any measure, for the decisions on the Sherman Act do not go that far. Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834,

Ann. Cas. 1912D, 734; United States v. Keystone Watch Case Co. (D. C.) 218 Fed. 502. It means unlawful restraint of trade and unlawful restraint upon competition. But just what constitutes unlawful conduct when performed by a corporation built from parts of an old combination and created for a particular purpose raises a question which can, we surmise, be answered with certainty only by those who conceived the purpose and are charged with the task of carrying it out.

That there may be no doubt as to the matter which distinguishes this case and on which we shall rest our decision, we again advert to the fact that the Hercules Powder Company is something more than a manufacturing and selling corporation. It is an integral and vital part of the court's scheme of dissolution and is made a potential instrument for breaking up and for keeping broken up a combination found unlawful. Into that combination, of which it never was a part, the court injected it. It is the wedge which the court first made and then drove into the combination to pry apart its offending members, and thereafter to keep them apart. By its decree the court not only put the Hercules Powder Company there, but it still holds it there and, doubtless, intends to keep it there. Such being its position in relation to the many defendants in this litigation, the Hercules Powder Company hesitates to move in a transaction of this kind, disturbing, as it may, the principle on which the allocation of competitive producers in varying fields was made, lest it defeat the purpose for which the court used and still is using it. It therefore asks whether its intended purchase of the Ætna properties defeats or otherwise disturbs that purpose; in other words, it asks the court to interpret and, if need be, modify its own decree so that the transaction may not violate it. 10 Enc. Pl. & Pr. 1108; Wells F. & Co. v. Oregon R. & N. Co. (C. C.) 19 Fed. 20, 22; Rodgers v. Pitt (C. C.) 89 Fed. 424; Tornanses v. Melsing, 106 Fed. 775, 778, 45 C. C. A. 615; Magennis v. Parkhurst, 4 N. J. Eq. 433; 2 High on Injunctions, § 1416.

If the Hercules Powder Company had come into existence in an ordinary way and was concerned with nobody's business but its own, it doubtless could expand as any other corporation; that is, by building and acquiring properties in new fields, always, of course, with proper regard to the Sherman Anti-Trust Act. But the Hercules Powder Company is bound not by the Sherman Act alone but by the court's decree, demanding of it a function not acquired from its charter or from general law, but imposed by the court. Why should not the court in such case construe its decree? True, the Hercules Powder Company is bound to know the law, and this includes the Anti-Trust Law. If that company were not a party to the court's decree of the character we have been at pains to describe, it might not be heard to inquire whether the proposed transaction would violate the Sherman Act. But that is not the matter here. Rather it is but incidental to the matter. There is no representation by the United States that the proposed purchase of the Ætna properties by the Hercules Powder Company is in itself violative of the Sherman Act. Of course, the proposed purchase would be violative of the decree if it were violative

of the Sherman Act, as it would be violative of the decree if thereby the Hercules Powder Company lost its wedge-like function though the transaction were not violative of the Sherman Act. Plainly then we have jurisdiction to pass upon the proposed purchase and determine whether it would violate the decree in any of its aspects.

Having jurisdiction to entertain the petition, the next question is, whether the case calls for its exercise: The United States says that it does not, because of insufficient averments of fact.

Turning to the proposed transaction, it should be noted that the United States, while maintaining that the transaction would be opposed to the spirit of the final decree in the Du Pont Case and would have a tendency detrimental to the purpose of the Sherman Anti-Trust Law, does not take the position that if carried out it would violate that law. Unless we discern in the proposed transaction, considered with reference to the Hercules Powder Company in particular and to the industry in general, something at least suggestive of violation of the Anti-Trust Law, we are free to pass to a consideration of the lawfulness of the transaction with reference to the plan of the decree.

A careful review of the explosives industry set forth by the petitioner in elaborate detail with reference to areas of consumption, number and distribution of producing plants, and competitive conditions, the accuracy of which is in no particular challenged, has convinced us that in permitting the Hercules Powder Company to acquire the several properties of the Ætna Explosives Company actual competition in the industry within their respective regions will remain undiminished, though the number of competitors will, of course, be reduced by the withdrawal of one. Indeed, it is persuasively represented that competition will be increased by thus strengthening the Hercules Powder Company in its contest for business against the Du Pont Company, its strongest rival. However that may be, we are satisfied, after a careful study of a great volume of data gathered from authentic sources, a recital of which in this opinion is quite impracticable, that the proposed purchase of the Ætna properties by the Hercules Powder Company will not disturb the position in the industry which the court has made for the Hercules Powder Company; that it will not abridge the purpose for which the court employs that company in maintaining the separation of the offending members of the combination previously existing; and that it will not throw out of balance the competitive conditions in the industry which the court sought—and which evidently it has achieved—by the instrumentalities of the Hercules Powder Company and the Atlas Powder Company in its scheme of dissolution.

Of course, after the acquisition of the Ætna properties, the Hercules Powder Company will remain bound by all applicable injunctions of the main decree in the Du Pont Case, and, as always, it will continue bound in its business conduct to observe at its peril the inhibitions of the Sherman Anti-Trust Law. The modification of the decree which we shall direct will be in no sense a shield against the consequences of any unlawful conduct which the Hercules Powder Company may in the future pursue.

As the motion to dismiss is·in the nature of a general demurrer, we direct that an order be drawn so modifying the final decree in the Du Pont Case that it may conform with the prayers of the amended petition of the Hercules Powder Company and with this opinion.