**SINGER MFG. CO. et al. v. SEINFELD.**
**No. 305.**

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

Gifford, Scull & Burgess, of New York City (George F. Scull and William F. Wilder, both of New York City, of counsel), for plaintiffs-appellants.

Markewich & Null, of New York City (Milton Friedman and Jerome G. Rosenhaus, both of New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiffs are respectively the manufacturers and the exclusive distributors and retailers of the well-known Singer sewing machines, their parts and accessories. They will be referred to herein indiscriminately as the plaintiff. The defendant is a former employee of the plaintiff who for some years has maintained his own store in New York City where he has sold Singer sewing machines, their parts and accessories, together with those of other manufacturers. Some of the Singer machines he has sold have been new and apparently were obtained with the connivance of unfaithful employees of the plaintiff as its policy is not to sell new machines to dealers, keeping the supplying of new machines to users an exclusive function of its own.

The plaintiff has established by long usage, and also registered in the Patent Of-

fice as long ago as 1908, its trade-mark "S." Its exclusive right to that trade-mark in respect to sewing machines and their accessories is not questioned here. Nor is its right denied to have the defendant refrain from making any misleading use of that letter or of "Singer Sewing Machines" or "Singer Machines" in connection with his business. He has already been enjoined from so doing.

In an action in equity between these parties in the District Court for the Southern District of New York a consent decree was entered on February 29, 1924, enjoining, inter alia, the defendant perpetually "from making or causing to be made or assisting in making any misleading use of the letter 'S', 'Singer Sewing Machines' and 'Singer Machines', or any similar letter or sign calculated to be mistaken therefor, or confused therewith, in connection with the manufacture and sale of any sewing machine, sewing machine needles and parts, and other sewing machine accessories." Jurisdiction was retained and leave granted the plaintiff to "apply at the foot of this decree for such other, further or additional relief as may hereafter be deemed necessary * * * ."

On June 25, 1936, the plaintiff applied for an order adjudging the defendant in contempt for violation of the above mentioned decree and for a supplemental injunction. A hearing upon affidavits supplemented by the taking of testimony in open court was had which resulted in the failure of the court to adjudge the defendant in contempt and the denial of the supplemental decree, "without prejudice to a new suit seeking the same relief as sought in said motion for a supplemental injunction." The plaintiff appealed.

It appeared that the defendant conducted a store at No. 321 West 125th street, in New York City not far from one of the stores of the plaintiff. He was in poor health and his daughter was in charge for him. New and secondhand sewing machines of various makes, including the Singer, were dealt in together with their parts and accessories. Above the display window on the street was a large sign "Singer Machines," and on the window itself was a sign consisting of the word "Singer" in what looked somewhat like the cut-off top curve of a large letter "S" over a straight bar in which appeared "2 Spool."

There was testimony, which was contradicted, to the effect that customers had bought used Singer machines at the defendant's store in the belief that they were new in reliance upon representations made in behalf of the defendant that the store itself was one of those maintained by the plaintiff. The trial judge was satisfied that these customers had made such purchases in such erroneous belief, but did not reach the conclusion on the evidence that they had been misled into so doing by anything done by the defendant or his employees in violation of the injunction. It also appeared that defendant's customers were given receipts for payments on forms printed substantially like those used for a similar purpose by the plaintiff though paper of a different color was used and there was no mention of the plaintiff's name.

The oral testimony being conflicting and having been resolved in favor of the defendant by the trial judge who saw and heard the witnesses, we feel bound to respect his better opportunity to decide correctly as to credibility and to accept his conclusion on the facts. Unquestionably the burden was on the plaintiff to prove the contempt alleged and that involved proof of conduct calculated to mislead. It was not quite enough to prove that customers had been mistaken to show that the defendant was guilty of contempt. True it is that if the oral testimony of what the defendant's daughter in charge of his store told certain customers had been believed in spite of her denial there would have been enough but without that reliance for this purpose must be upon the signs and the receipt. The defendant had the undoubted right to sell used Singer machines and to display nondeceptive signs to help do that. If he could stock new machines lawfully his right to sell them of course existed. He was not forbidden by the injunction to use signs to indicate that he had Singer machines for sale. The general scope of the injunction was the forbidding of the use of the indicia exclusively belonging to the plaintiff or of what would be reasonably mistaken for it to the end that the defendant might not trade on the plaintiff's good will under the pretense that he was acting in its behalf. All this makes it impossible for us to hold that the trial judge was in error in failing to find in the evidence the essential elements of proof of contempt. The question is merely one of fact with too

much conflict in the testimony needed to sustain the burden of proof.

The motion for a supplemental injunction was denied on the theory that a new suit was necessary and so given no consideration on the merits. Whether that disposition was correct as a matter of law depended upon whether it was sought to enlarge the scope of the original injunction or merely to make more clear and specific what had already been enjoined in order that its application, or the reverse, to new acts and situations might be made plain. See Armstrong et al. v. De Forest Radio Tel. & Teleg. Co. (C.C.A.) 10 F.(2d) 727. Jurisdiction to modify the injunction within its original scope to adapt it to current conditions as they might arise was clearly possessed; indeed, had been expressly retained. See United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; United States v. E. I. Du Pont, etc., Co. (D.C.) 273 F. 869; Green Co. v. Henry P. Adams Co. (C.C.A.) 247 F. 485.

But regardless of power and even of the refusal of the court to pass upon the merits of the application for the supplemental injunction, there should be no reversal unless it appears clearly that a supplemental injunction should have been granted on the record as made. The issue is not, to be sure, exactly the same as it was on the question of contempt but it is closely akin. As it is one of fact, it is difficult to perceive how the court which did not, and as we have held might not, credit the vital disputed testimony introduced in behalf of the plaintiff could have been held in error for failing on the same evidence to grant a supplemental injunction had the application been denied on the merits. This being so, we do not find cause for reversal merely because the denial was without consideration on the merits. But enough was shown to make it reasonable to believe that the plaintiff may be entitled to a supplemental injunction. We will, therefore, preserve its right to that upon proper proof in an application similar to the one already made by affirming the order without prejudice to the right of the plaintiff either to renew the application or to proceed by way of a new suit as it may be advised. In view of this, other questions raised and argued are left for consideration when, if ever, they become material.

Order affirmed without prejudice as above.