**KING–SEELEY THERMOS CO.,**
**Plaintiff-Appellee,**

v.

**ALADDIN INDUSTRIES, INCORPO-**
**RATED, Defendant-Appellant.**

**No. 470, Docket 32871.**

United States Court of Appeals
Second Circuit.

Argued May 6, 1969.

Decided July 31, 1969.

---

Moore, Circuit Judge, dissented.

Dugald S. McDougall, Chicago, Ill., Curtiss K. Thompson, New Haven, Conn. (Theodore R. Scott, David L. Ladd, Chicago, Ill., Myres S. McDougal, New Haven, Conn., of counsel), for defendant-appellant.

Don K. Harness, Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., for plaintiff-appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal is from a denial by our colleague, Judge Anderson, sitting in the District Court for the District of Connecticut, of a motion by Aladdin Industries, Incorporated, to modify a judgment and an order previously made by him in an action for threatened trademark infringement brought against it some years ago by the predecessor of King-Seeley Thermos Co., 289 F.Supp. 155. The opinion leading to the judgment (hereafter the decree of injunction) is reported in 207 F.Supp. 9 (D. Conn. 1962); the other order (hereafter the policing order) was entered on December 30, 1963, and is not officially reported. We shall state only such facts and history as are necessary to understand the issues here presented.

The controversy stemmed from King-Seeley's assertion of a valid trademark in the word Thermos, which it and its predecessors had registered in the United States Patent Office beginning in 1908. The initial registration was for "Thermos" printed as such; subsequent registrations covered the word in logotype and solid capitals; none related to the word beginning with a lower-case "t." Learning from Aladdin that it was about to market its line of vacuum-insulated containers through use of the term "thermos," King-Seeley brought suit to enjoin this. Aladdin counterclaimed for a declaration of invalidity of the trademark. The court concluded that Aladdin had "sustained its burden of proof that the word 'thermos' is descriptive and generic and belongs in the public domain." However, the court also concluded that there was "an appreciable, though minority, segment of the consumer public which knows, recognizes and uses the plaintiff's trade-mark

'Thermos.'" 207 F.Supp. at 14. In an effort to allow Aladdin to make use of the generic term on the one hand and "to eliminate confusion and the possibility of deceit of * * * consumers" on the other, the court permitted Aladdin to use the word "thermos" in its literature, advertising and labels only under seven conditions. *Id.* at 14–15. The most important of these for present purposes were that the word must be entirely in lower case letters and be preceded "by the possessive of the name 'Aladdin' or, at its option, the possessive of 'Aladdin' plus one of defendant's brand names." In the decree the court retained jurisdiction "for the purpose of enabling either of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, or the modification or termination of any of the provisions thereof in the light of changed circumstances, or for the enforcement of compliance therewith or for the punishment of violations thereof." King-Seeley appealed, Aladdin did not, and we affirmed, 321 F.2d 577 (2 Cir. 1963).

Aladdin shortly complained to the district court with respect to publicity and policing letters issued by King-Seeley. Finding that King-Seeley and, to a lesser extent, Aladdin had distorted the judgment, Judge Anderson issued a further order on December 30, 1963. This laid down ground rules designed to insure that all advertising or publicity referring to the judicial decision should fairly represent it, and authorized King-Seeley to send out policing letters to persons who it had cause to believe were violating its trademark. These could take the form of a simple notice of infringement and request for discontinuance or could add a citation, a citation and the summary of the decision that had been approved for use in publicity, or a discussion accompanied by a copy of this court's opinion.

In the motion that gives rise to this appeal Aladdin sought modifications both of the decree of injunction and of the policing order. It proposed that the conditions listed in the original decree be continued only with respect to labels on its products and that in literature, advertising and publicity releases it should be permitted to use "thermos" in solid capitals or with an initial capital "when such typography and/or capitalization are consistent with that of other generic or common words appearing therewith or are in accordance with ordinary rules of grammar," provided only that the material be identified as emanating from Aladdin or its representatives and that Aladdin should be prohibited, as it was in the decree of injunction, from using the words "genuine" or "original" or synonyms thereof relating or referring to "thermos." In support of this it urged that the decree of injunction had handicapped its use of the generic term in various ways, e. g., by preventing publication of testimonial letters from satisfied customers using only the word "thermos," curtailing press releases since newspaper editors tended to reject those which made too frequent mention of the manufacturer, and preventing such effective forms of advertising as "Who makes the best thermos?" It submitted that any possibility of harm to King-Seeley from such advertising or publicity could be avoided by identifying the source, without requirements so severe as those in the decree.[1]

1. Aladdin requested that the original decree further be amended to enjoin King-Seeley from using the word "genuine" with its trademark except when the word "brand" is also used—that is, "Genuine Thermos Brand"—with "genuine" and "brand" in the same size and type face. This addition was said to be necessary to prevent King-Seeley from using expressions that might imply erroneously that bottles made by its competitors are not in fact vacuum-insulated bottles. The judge denied this portion of the motion because Aladdin had made no substantial showing that the alleged danger of confusion existed, and the point is not pressed on appeal.

Aladdin also sought a modification of the policing order to provide that King-Seeley should not have reasonable cause to believe its trademark rights had been violated by the use of the term "thermos" by persons other than Aladdin in type forms not permitted to Aladdin itself, where such third parties had not used the logotype "THERMOS" and the typographical form and/or capitalization were consistent with that for other generic words. In support of this Aladdin urged that King-Seeley, while ignoring advertisements where dealers used "Thermos" or "THERMOS" without any identification of source, sent policing letters whenever a dealer used the word in one of these forms and identified it with the product of a competitor, with the result that many Aladdin dealers became confused and refrained from advertising which the decree permitted. Finally, Aladdin urged that the policing order be amended in conformity with the changes sought in the decree of injunction, by altering the approved summary of the decision to explain that most of the restrictions applied only to Aladdin's labeling, not to its publicity or advertising.

Judge Anderson denied both branches of the motion. Analyzing United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932) and United States v. United Shoe Machinery Corp., 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968), he thought the applicable rules of law to be:

> "(1) Where a party seeks a modification which will relieve it of conditions or restrictions imposed by the original decree, it has the burden of showing that there has been such a change in circumstances that the danger at which the decree was directed no longer exists.
>
> "(2) Where one party seeks a modification which will impose new and additional restrictions upon the other, it must prove that the provisions of the original decree have failed fully to achieve the objects at which they were directed."

Considering the portion of Aladdin's motion seeking modification of the decree of injunction to be governed by (1), the supposed rule of the *Swift* case, he held that whatever merit there might or might not be in Aladdin's position, it had not sustained the burden of showing a change in circumstances. Viewing the portion of the motion that sought modification of the policing order as governed by (2), the less stringent rule of the *United Shoe* case, he held that Aladdin had not "carried its burden of showing that the injunction dated December 30, 1963, has been ineffective."

Although we admire our brother Anderson's effort to achieve precision, we think he gave the *Swift* decision a rigidity the Court did not intend. The defendants who there sought modification of a consent decree had been obliged by the very nature of the case to stake their claim on drastic changes in conditions and, as pointed out in United Shoe, 391 U.S. at 248, 88 S.Ct. at 1499, the language "to the effect that 'nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change' * * * the decree, must, of course, be read in light of this context." Mr. Justice Cardozo said generally in *Swift* that:

> "Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." 286 U.S. at 114, 52 S.Ct. at 462.

The true holding of *Swift* was stated in United Shoe, 391 U.S. at 248, 88 S.Ct. at 1499:

> "*Swift* teaches that a decree may be changed upon an appropriate showing, and it holds that it may *not* be changed in the interests of the de-

fendants if the purposes of the litigation as incorporated in the decree (the elimination of monopoly and restrictive practices) have not been fully achieved."[2]

■ A case like this involves no such sharp conflict between wrong-doing and right-doing as did *Swift*. It presents rather the need for drawing the line between two kinds of right-doing, King-Seeley's legitimate interest in protecting its trademark insofar as this is valid and Aladdin's equally legitimate interest in being free to sell its products by use of a generic term, and their opposites, attempts by King-Seeley to extend its trademark beyond its legal bounds and efforts by Aladdin to encroach upon the protected area. "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its power and processes on behalf of the party who obtained that equitable relief." System Federation v. Wright, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed. 2d 349 (1961). Aladdin can be regarded as having obtained equitable relief in the decree of injunction quite as much as King-Seeley. That King-Seeley was the plaintiff was mere accident; the issue could as well have been tendered in a suit by Aladdin for declaratory relief. In that event the decree would very likely have directed that King-Seeley refrain from threatening Aladdin with liability for infringement under the prescribed conditions and Aladdin would now be seeking to "impose new and additional restrictions" upon what King-Seeley could do. While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not

properly adapted to accomplishing its purposes. See Singer Mfg. Co. v. Seinfeld, 89 F.2d 35, 37 (2 Cir.1937); International Silver Co. v. Oneida Community, 93 F.2d 437 (2 Cir.1938); John B. Stetson Co. v. Stephen L. Stetson Co., 128 F.2d 981 (2 Cir.1942); Morse-Starrett Prods. Co. v. Steccone, 205 F.2d 244, 248 (9 Cir.1953); *cf.* Restatement of Torts § 943, comment *e* (1939); 4 Callmann, Unfair Competition and Trade-marks § 88.5(c) (2d ed. 1950). Here, as Aladdin points out, the decree was entered before any experience concerning Aladdin's use of "thermos" had been had.

■ We think therefore that the court imposed unduly rigid restrictions on its consideration of so much of Aladdin's motion as requested modification of the decree of injunction and that it was free to grant relief if Aladdin could show that, in the light of experience, the detailed provisions of the decree seriously and needlessly impeded its exploitation of the generic term and that modification was necessary to achieve the results intended, even though this would take the form of reducing the restrictions imposed upon it. We express no opinion what the decision should be when that criterion is applied. Although the showing seems sufficient to justify an exercise of discretion in Aladdin's favor, it did not compel this. While we hold there is power to modify an injunction even in the absence of changed conditions, the power should be sparingly exercised. "Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided." System Federation v. Wright, *supra*, 364 U.S. at 647, 81 S.Ct. at 371. We thus

---

2. While we have no occasion to consider the validity of the formulation in Sinclair Oil & Refining Co. v. American Oil Co., 405 F.2d 803, 813 (8 Cir.), cert. denied, 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969), as applied to the case there in hand, we regard it as imposing too severe a requirement as a general rule.

leave decision to Judge Anderson under the standard we have enunciated.

Aladdin concedes that the judge applied the correct standard in passing on the branch of its motion that sought to modify the policing order, and we would see no reason for interfering with his refusal to alter this if it stood alone. Since, however, a modification of the decree of injunction might require some changes in the policing order, we vacate the order denying this part of Aladdin's motion so that the judge may have freedom to make such modification of the policing order, if any, as may become appropriate.

The order denying Aladdin's motion is vacated and the cause remanded for further proceedings not inconsistent with this opinion.

MOORE, Circuit Judge (dissenting):

In my opinion, the application of principles of fundamental fairness and the protection of the public from deception call for the affirmance of Judge Anderson's decision. The appellant, Aladdin Industries, Incorporated (Aladdin) seeks under the guise of modification to alter radically Judge Anderson's original decree and our unanimous affirmance thereof. 321 F.2d 577. A brief review of his original opinion is informative and necessary for a proper decision here.

Since 1908 King-Seeley has possessed trade-marks showing the word "thermos" in various forms, such as "Thermos," "THERMOS" and "THERMOS." The original opinion was based upon the conclusion that "The word 'thermos' has become a generic descriptive word in the English language as used in the United States" and "became a part of the public domain because of the plaintiff's [King-Seeley's] wide dissemination of the word 'thermos' * * *." 207 F. Supp. 9 at 14.

Equally important was the court's recognition of King-Seeley's existing trade-marks and the necessity of fashioning a decree so as "to eliminate confusion and the possibility of deceit of such consumers." The court, therefore, restricted the use of the word "thermos" by Aladdin "in its literature, in its advertising and on its labels" except as limited in its Conclusion of Law, paragraph 5, subparagraphs (a) through (g). Essentially, these restrictions called for the use of "thermos" in lower case type and the addition of the possessive of "Aladdin" preceding its use. More specifically, the court construed its decree to "prohibit the use of an initial capital 'T.'" (Namely, from invading the trade-mark "Thermos"). The court stated that in its opinion the likelihood of confusion "is a matter for the court to determine from the circumstances of each case." 207 F.Supp. at 26. Although the court found that "reasons for permitting any generic use of 'thermos' under the circumstances of this case are to permit the natural enrichment of the language and to prevent the plaintiff from maintaining a monopoly of the word," *id.* at 27, that "on a balancing of the considerations of competitive disadvantage to the defendant [Aladdin] against the risk that a minority of consumers who know, recognize and use 'thermos' as a trade-mark may be deceived, the latter must be given primary consideration and it is only in the event that the possibility of confusion engendering such deceit can be removed that consideration can be given to the danger of plaintiff's monopoly as a reason for allowing the defendant and others to use 'thermos' generically." *Id.* at 27. To remove this possibility of confusion, the court imposed the restrictions.

Upon the appeal, this court carefully analyzed the restrictions imposed and unanimously affirmed, saying "These conditions provide a sound and proper balancing of the competitive disadvantage to defendants arising out of plaintiff's exclusive use of the word 'thermos' and the risk that those who recognize 'Thermos' as a trademark will be deceived," and held that "plaintiff is entitled to retain the exclusive right to all of its present forms of the trademark

"Thermos' without change." 321 F.2d at 581.

In 1968 Aladdin sought to modify the 1963 decree by eliminating the injunction against use of the word "thermos" "in its literature, in its advertising" and confining the injunction only to use "on its labels." The court (again Judge Anderson who as the author of the original decree was familiar with the situation) received the evidence which Aladdin offered, including many exhibits, considered Aladdin's complaint that it could not challenge the buying public by the question "who makes the best thermos?" and the testimony of Aladdin's advertising agent and concluded "that there is an insufficient showing of hardship to justify modification of the decree"; that "Aladdin has not shown that the danger at which ¶ 5 was directed has been eliminated through changing circumstances"; and that "There is no evidence to show that the substantial minority which the court sought to protect has diminished in size, or that the use of 'thermos' generically for several years has removed the possibility that this group will continue to be confused." Accordingly, Judge Anderson denied the motion to relieve Aladdin from the restrictions of the original decree.

The majority now not only substitute themselves for Judge Anderson in his fact-finding function but also overrule, in effect, the unanimous affirmance by another panel of this court of the original decree. Thus, they say that "where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes," a power in equity exists to modify. This can only mean that the majority, as two judges, believe that they have a "better appreciation of the facts" than four other judges including, in particular, the judge who saw and heard the witnesses and who has been familiar with the case for over five years. Judge Anderson knew then, as they say now, that he was "free to grant relief *if* Aladdin could show that, in the light of experience, the detailed provisions of the decree seriously and needlessly impeded its exploitation of the generic term and that modification was necessary to achieve the results intended, even though this would take the form of reducing the restrictions imposed upon it." [Emphasis added.] But Judge Anderson specifically held that their "if" assumption had not been established.

Nor did Judge Anderson acquire a "rigidity" of mind by a misconstruction of the *Swift* and *United Shoe* cases. To the contrary, his analyses of these cases demonstrate that he was fully aware of the extent of their holdings. Each dealt with an entirely dissimilar situation. Even their judicial generalities are inapplicable except for their teaching "that a decree * * * may not be changed in the interests of the defendants if the purposes of the litigation as incorporated in the decree * * * have not been fully achieved." 286 U.S. at 117–118, 52 S.Ct. at 463.

Moreover, in the original decree restraining Aladdin's use of "thermos," Judge Anderson retained jurisdiction "for the purpose of * * * modification or termination of any provisions thereof * * *". It is thus apparent that he knew, and intended the litigants to know, that the decree could be changed, if change was in fact warranted. In Judge Anderson's decision, he stated that the "central issue" in deciding whether to grant modification was "whether [the relief requested] can be made without prejudice to the interests of the class whom this particular restraint was intended to protect." In light of all the evidence, he concluded that change was not warranted because the "substantial minority" who rely on the "thermos" trade-mark, and whom the court sought to protect, would be hurt by relaxing the restraints as Aladdin had sought. Judge Anderson, therefore, undertook precisely the careful and flexible approach which the majority claim he should have taken.

Naturally, Aladdin would like to undo Judge Anderson's original decision and

**38**

our affirmance thereof. To delete the restraint from "its literature" and from "its advertising" would, in substance, accomplish a reversal of these decisions. The purchasing public is induced by literature and advertising into a state of mind where it desires to have the object advertised. Only after physically acquiring the object is its proximity usually sufficiently close so that the label may be seen and inspected. Thus the very deception which the four judges here would endeavor to prevent will have been attained through literature and advertising.

Since I find no basis in law or in fact for disturbing Judge Anderson's fair and equitable decision, I would affirm.