Boston M. CHANCE and Louis C. Mercado et al., Plaintiffs,

v.

The BOARD OF EXAMINERS, the Board of Education of the City of New York, the Chancellor of the City School District, et al., Defendants.

No. 77 Civ. 6314 (MP).

United States District Court, S. D. New York.

June 20, 1978.

Jean R. Silver, New York City, for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Bd. of Examiners, by Howard A. Jacobson, New York City.

Law Dept. of the City of New York, for defendant Bd. of Ed., New York City, by Deborah Rothman, Asst. Corp. Counsel, New York City.

Lewis, Greenwald & Oberman, New York City, for intervenor Council of Sup'rs and Administrators, by Leonard Greenwald, New York City.

## OPINION

POLLACK, District Judge.

Plaintiffs, black and hispanic persons seeking supervisory positions in the New York City school system, commenced this suit challenging the examinations used in licensing New York City school superintendents in September, 1970. The ensuing eight year litigation marathon has now reached its terminal phase. Now before the Court are proposed orders which would grant permanent constructive seniority, for purposes of demotions, transfers and lay-offs, to members of the plaintiff classes who were denied supervisory positions as a result of the use of the challenged examinations. Characteristically, as at each step in this contentious controversy, the parties have seized upon every opportunity for dispute. Plaintiffs and defendant Board of Education of the City of New York both support the grant of permanent constructive seniority, but they cannot agree on the formulation of an order awarding the desired relief. The defendant Board of Examiners and the Council of Supervisors and Administrators of the City of New York, Local 1 (CSA), as intervenor, oppose any grant of permanent constructive seniority.

The appropriateness of any relief to be awarded turns largely on what the prior proceedings herein have produced. Thus, a reasonably detailed history of the relevant phases of the suit is necessary to place the matters now raised in proper focus. The complaint alleged that the defendants' examinations for licensure of school supervisory personnel were racially discriminatory. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, did not apply to governmental agencies in 1970, and accordingly plaintiffs relied on the equal protection clause of the fourteenth amendment and 42 U.S.C. § 1981.

In July, 1971 Judge Mansfield granted a preliminary injunction proscribing further use of the examinations, on the grounds that plaintiffs were likely to prevail on the merits and that the balance of hardship resulting from granting or denying interim relief tipped in favor of the plaintiffs. *Chance v. Board of Examiners,* 330 F.Supp. 203, 224 (S.D.N.Y.1971). He found a probable de facto constitutional violation on the grounds that the examinations disqualified a disproportionate percentage of blacks and hispanics, and the defendants had not carried their burden of showing that the examinations were necessary to assure that licensed supervisors possessed the necessary skills. *Id.* at 223. Judge Mansfield did not find that defendants had engaged in intentional discrimination. To the contrary, he

approved defendants' aims in developing and using the examinations, but found that the actual examinations in use were ineffective to achieve those aims. *Id.* at 218–22. The Court of Appeals affirmed, approving Judge Mansfield's construction of the fourteenth amendment equal protection clause. 458 F.2d 1167, 1175–78 (2d Cir. 1972).

In June, 1973 Judge Mansfield entered a final judgment on consent, the terms of which had been negotiated by the parties, against the Board of Examiners, its members and the Chancellor of the City School District. The case was reassigned to Judge Tyler in January, 1974 and in March, 1975 he entered an order modifying the final judgment. In addition to adjusting the terms of the judgment, the order made it applicable to the Board of Education, based on its consent. The judgment expressly provided that its entry "shall not constitute any determination of wrongdoing or misconduct on the part of any party." All claims which might have been asserted on the basis of the actions complained of in the complaint were declared extinguished, and plaintiffs were enjoined from prosecuting any other proceeding based upon any claim comprehended by the complaint. Thus, there never has been a plenary trial or a final determination of liability in this suit.

The final judgment, as originally entered and as modified from time to time, enjoins continued use of the old examinations, establishes an interim system for licensing, and looks forward to promulgation of a permanent examination system. It says nothing concerning supervisory employees' rights based on seniority pursuant to the collective bargaining agreement between the Board of Education and CSA, as bargaining representative for New York City school supervisors. However, two controversies have arisen concerning seniority during this suit.

First, in December, 1973 Judge Mansfield filed an opinion concerning the impact of the final judgment on the transfer provisions of the collective bargaining agreement. Under the agreement, supervisors could apply to be transferred from one school district to another only if they had served at least five years in the school from which transfer was sought. On the other hand, supervisors qualified for transfer received a preference over newly appointed supervisors in filling available positions. Noting that under these provisions the preference for transferees would be available only to persons licensed under the abolished examination system, Judge Mansfield found that they violated the portion of the final judgment providing that vacancies could be filled by appointment of either persons licensed under the old system or persons qualified under the interim plan. In anticipation of a time when transfer privileges again could be granted on the basis of seniority, he expressly stated that the interdiction of such provisions was not permanent. Finally, Judge Mansfield recognized that his decision affected the rights of CSA, but concluded that the union informally had received all the procedural rights of an intervenor, and stated that it would be granted formal intervenor status with respect to the specific issue addressed by the opinion.

Second, in July, 1974 plaintiffs and the Board of Education asked Judge Tyler for rulings concerning the impact of the final judgment on the collective bargaining agreement's excessing regulations. Excessing is the transfer, demotion or termination of an employee when a position is eliminated, and the agreement provided that supervisors with the least seniority among those competing for the remaining positions would be excessed first. Plaintiffs' concern regarding excessing arose from the expectation that many positions would be eliminated in the Fall of 1974 due to New York City's financial crisis and decreased school enrollment. At a hearing held on August 12, CSA was permitted to intervene with respect to the excessing issue.

Judge Tyler's efforts to obtain an agreement among the parties concerning excessing proved unsuccessful, and on November 22, he entered an order substantially drafted by the Court. As he explained at a hearing on November 8, he found that a

disproportionate percentage of those who were likely to be excessed under the terms of the collective bargaining agreement would be members of the plaintiff classes. Accordingly, he directed in general that the proportion of blacks and hispanics among supervisors who were excessed should not exceed the proportion of blacks and hispanics among the total number of supervisors. The order was to remain in effect only until November 30, 1977. It was modified in specifics not now material on February 7, 1975.

The Court of Appeals reversed. *Chance v. Board of Examiners,* 534 F.2d 993 (2d Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). The Court held that a "last hired-first fired" rule is not unlawfully discriminatory simply because it has a disproportionate impact on minorities. *Id.* at 997. It noted that protection from the normal operation of a seniority system through a grant of constructive seniority may be an appropriate form of relief for victims of some independent instance of unlawful discrimination. Judge Tyler's order was improper, however, because it provided protection from normal seniority rules for all black and hispanic supervisors, of whom only a fraction had been affected by the abolished examination system. *Id.* at 998–99. Finally, noting that appellants seemed not to object, the Court of Appeals remanded with instruction to grant constructive seniority to plaintiff class members who had failed one of the old examinations or had not taken one of the old examinations on the basis of a belief that they were discriminatory. *Id.* at 999, 1007.

The case was reassigned to the present Judge in April, 1975. In accordance with the decision of the Court of Appeals, the Court entered an Interim Order in August, 1976 directing the Board of Education to award constructive seniority to the members of the plaintiff classes.

A judgment entered by the Court in July, 1976 in connection with the development of a permanent examination system provoked yet another appeal. Before the Court of Appeals, the Board of Examiners argued that the District Court was without authority to impose substantial restraints on the defendants which were not contained in the consent judgment, because there had been no determination of liability. In addition, appellants contended that the District Court no longer had jurisdiction of the suit, in light of the Supreme Court's decision in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), holding that intentional discrimination is an essential element of a violation of the constitutional guarantees of equal protection.

The Court of Appeals rejected in dictum the first argument, as applied to the inchoate portion of the consent judgment concerning the permanent examination system, and found it unnecessary to consider the impact of *Washington v. Davis. Chance v. Board of Examiners,* 561 F.2d 1079, 1085, 1087–88 (2d Cir. 1977). The Board did not challenge the interim relief previously granted. With respect to formulation of a permanent examination system, the Court of Appeals determined that questions of state law had come to outweigh federal constitutional issues. Accordingly, it remanded with instructions to dismiss the suit, and remit the parties to the state courts. *Id.* at 1088–92. Finally, in a Supplemental Opinion the Court of Appeals directed the District Court to sever and retain jurisdiction of the excessing issue. In this connection, it stated:

> Our decision herein does not foreclose the District Court from taking such action as it sees fit with respect to this matter, including a determination of any questions of jurisdiction which may be raised by the Council of Supervisors  . . . .

*Id.* at 1093. The direction regarding severance was effectuated by an order filed December 30, 1977.

The Court held a conference on April 20, 1978 seeking a final resolution of the excessing issue, and has had the benefit of the parties' arguments presented both at the conference and in subsequent correspondence. Plaintiffs contend that an award of permanent constructive seniority is mandat-

ed by the 1976 opinion of the Court of Appeals, and is necessary to implement the final judgment. The Board of Examiners and CSA oppose the grant of permanent constructive seniority on several grounds, including that plaintiffs are not entitled to substantial relief in addition to that provided in the consent judgment because there has been no finding of liability, and that further relief is barred because there never has been a finding of intentional discrimination as required by *Washington v. Davis.* Upon a careful review of the prior proceedings, the Court has determined not to award permanent constructive seniority to members of the plaintiff classes, for the reasons given below.

The relief sought by plaintiffs is not mandated by the Court of Appeals' 1976 opinion, remanding with instructions to accord constructive seniority to class members denied licenses as a result of the former examination system, *Chance v. Board of Examiners,* 534 F.2d 993, 999, 1007 (2d Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). That opinion was addressed to temporary relief granted by Judge Tyler for a period ending on November 30, 1977. *See id.* at 997. The Court of Appeals' directions regarding constructive seniority were based on a determination that such relief constituted a compromise which "should have been adopted by the District Court." *Id.* at 999. Thus, the 1976 opinion called for constructive seniority only as a form of interim relief. This conclusion is borne out by the Court of Appeals' subsequent decision which stated, in connection with directions to sever the excessing issue, that the "decision herein does not foreclose the District Court from taking such action as it sees fit with respect to this matter." *Chance v. Board of Examiners,* 561 F.2d 1079, 1093 (2d Cir. 1977).

■ The power of the Court to modify the consent judgment so as to provide additional relief was addressed by the Court of Appeals in the 1977 opinion. *Chance v. Board of Examiners,* 561 F.2d 1079, 1085 (2d Cir. 1977). A consent decree is a judicial act, not a private contract, and may be amended by the issuing Court. However, the Court of Appeals quoted with approval the holding of *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932), that "[n]othing less than a clear showing of grievous wrong evoked by new and unforseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned."

■ Traditional notions of due process require caution in modifying a decree to afford additional relief when, as in this suit, the decree was entered on consent, without a plenary trial or final determination of liability. The Court of Appeals seemingly recognized this in requiring a "clear showing of grievous wrong evoked by new and unforseen conditions" as a condition for modifying the consent decree in this suit. This requirement is more stringent than that previously adopted by the Court of Appeals with respect to a decree entered upon a plenary determination of liability. Under those circumstances, modification of the decree is proper if "a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 418 F.2d 31, 35 (2d Cir. 1969).

However, the relief sought is inappropriate under either standard. Constructive seniority, in connection with excessing, is not normally necessary to effectuate a decree directed at the manner of hiring. Thus, in *Jersey Central Power & Light Co. v. Local 327, Electrical Workers,* 508 F.2d 687, 700–04 (3d Cir. 1975), *vacated on other grounds,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812, *on remand,* 542 F.2d 8 (3d Cir. 1976), the court held that the last hired-first fired provisions of a collective bargaining agreement did not conflict with the purposes of a conciliation agreement between the employer and the Equal Employment Opportunity Commission, providing for nondiscriminatory hiring practices and affirmative action to increase the number of minority employees. Further, in contrast with the prospective relief afforded by the consent judgment,

grants of constructive seniority are compensatory in nature, designed to make whole the victims of past discrimination. Thus, constructive seniority resembles an award of backpay. Yet, no one could contend that a backpay award is necessary to the effectuation of the consent decree entered in this suit.

This determination is consistent with the prior decisions regarding transfers and excessing. The transfer issue addressed in Judge Mansfield's December, 1973 opinion pertained to hiring rather than excessing, and therefore plainly was covered by the original decree. The interim excessing orders were prompted by the unforseen financial crisis and decrease in enrollment in 1974, only three years after the old examination system was abolished. In contrast, that temporary crisis cannot justify additional permanent relief, and plaintiffs have not pointed to any other unforseen developments calling for modification of the decree.

Indeed, a change in circumstances since entry of the consent judgment requires that the relief sought be denied even if it is implicit in or necessary to the implementation of the judgment. In *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the Supreme Court rejected a challenge, pursuant to the equal protection guarantee of the fifth amendment due process clause, to the examinations used in hiring District of Columbia police officers. The Court held that findings below that the examinations excluded a disproportionate number of blacks, and had not been shown to be helpful in selecting qualified applicants, were not sufficient to show a constitutional violation. Rather, proof of discriminatory purpose is required. The requirement of proof of discriminatory purpose was applied to a fourteenth amendment equal protection clause action against a local government in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (dictum).

▮ A party has no right to insist on continued enforcement of a consent decree when the applicable law on which the decree is premised has been changed. *System Federation No. 91 v. Wright*, 364 U.S. 642, 652, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *Chance v. Board of Examiners*, 561 F.2d 1079, 1085 (2d Cir. 1977) (dictum). The same principle should apply here, where there has been a substantial change in construction of the applicable law. The consent judgment was entered after a preliminary injunction was issued upon a determination that plaintiffs probably would succeed on the merits, and the Court of Appeals affirmed. Both courts squarely relied on the view disapproved in *Washington v. Davis*, that a constitutional violation was established by a showing that an examination has a disproportionate impact on minorities and a failure by the defendant to show that it is useful in selecting qualified applicants. 458 F.2d at 1175–78; 330 F.Supp. at 223–24. Both courts excluded a finding of intentional discrimination. *See* 458 F.2d at 1175, 330 F.Supp. at 218–22. Indeed, the Court of Appeals' opinion was expressly disapproved in *Washington v. Davis*, 426 U.S. at 244–45 & n. 12, 96 S.Ct. 2040.

Accordingly, the application for an award of permanent constructive seniority is denied. For the same reasons, the interim award of constructive seniority is vacated. Since the sole remaining question of counsel fees may be raised in the main action, 70 Civ. 4141 (MP), this "case" represented by docket number 77 Civ. 6314 (MP) is closed.

SO ORDERED.