**Gerard A. MILLER, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 1252, Docket 92–4210.**

United States Court of Appeals, Second Circuit.

Argued March 25, 1993.

Decided June 29, 1993.

Daryl J. Hudson III, Washington, DC, for petitioner.

Randall W. Quinn, Sr. Litigation Counsel, S.E.C., Washington, DC (Paul Gonson, Sol., Jacob H. Stillman, Associate Gen. Counsel, Diane V. White, S.E.C., Washington, DC, of counsel), for respondent.

Before: MESKILL, Chief Judge, PRATT, Circuit Judge, and RESTANI,* Judge.

MESKILL, Chief Judge:

This is a petition for review of a final order of the Securities and Exchange Commission (SEC) denying relief from a 1986 consent order issued by the SEC, *Kidder, Peabody & Co.,* Exchange Act Release No. 22,871 [1985–1986 Transfer Binder] Fed.Sec.L.Rep. (CCH ¶ 83,963) (Feb. 6, 1986), censuring petitioner Gerard A. Miller for willfully aiding and abetting a brokerage firm's violations of section 15(c)(3) of the Securities Exchange Act, 15 U.S.C. § 78o(c)(3) and Rule 15c3–3, 17 C.F.R. § 240.15c3–3. Miller seeks to have us review the SEC's order denying his petition to set aside the 1986 censure alleging that in denying him relief the SEC (1) erroneously applied the standard of *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and (2) failed to consider the impact of a 1982 Letter of Admonition

---

* Honorable Jane A. Restani of the United States Court of International Trade, sitting by designa-

tion.

from the Director of Enforcement of the New York Stock Exchange (NYSE), allegedly concealed from Miller until after he agreed to the consent order. We deny the petition for review of the SEC's order.

## BACKGROUND

Miller was the Director of Operations for Kidder Peabody & Co., Inc. (Kidder), a major brokerage firm. In 1986 the SEC and Miller entered into a consent decree in which he was censured for aiding and abetting Kidder in violation of Rule 15c3–3. This rule requires that customer owned securities be delivered to the customer's account after purchase and that the brokerage firm maintain sufficient capital to protect customer funds. On several occasions, Kidder practiced "dual usage" of the securities, using the securities on lists of proposed short term collateral for Kidder's lenders and in conjunction with repurchase agreements and also delivering the securities to a customer's account.

Miller, who was represented by counsel, did not admit or deny the charges against him, but consented to the entry of the censure order and its findings. The order as it pertains to Miller reads, in pertinent part:

> [F]ollowing the date of this Order ... Miller ... [is] prohibited from acting in any supervisory capacity with respect to the possession and control provisions of Rule 15c3–3 until one of the reports described in Section IV.2.(f) above is filed with the New York Regional Office and states that there is no indication that Registrant [Kidder] has failed to implement and comply with [these] undertakings, ... but in no event shall the prohibition extend for a period of more than twelve months from ... the date of this Order.

*Kidder,* [1985–1986 Transfer Binder] Fed. Sec.L.Rep. (CCH) at 88,010. The order was dated February 6, 1986. Because this administrative matter was resolved by consent without an evidentiary hearing, there is no evidentiary record leading to the decree for us to consider.

Later in February, Miller learned of a 1982 letter from the Director of the NYSE Enforcement Division which informed Miller's supervisor, John T. Roche, of concerns about compliance with Rule 15c3–3. Miller claims that he would not have consented to the decree had he known earlier of this letter. Apparently Miller's argument is that his knowledge of his superiors' awareness that the NYSE was concerned about these violations would have affected his defense strategy. Nevertheless, Miller waited until March 6, 1992, more than six years later, to petition the SEC for relief from the censure, claiming that he would have pursued adjudicatory proceedings rather than enter into the consent order if he had known earlier of the letter's existence. Essentially, he contends that in light of this "new" evidence the censure is inequitable and should be expunged or deleted from his record.

The SEC denied Miller's request to vacate the sanction because he did not meet the standard set forth in *Swift,* 286 U.S. 106, 52 S.Ct. 460. We have appellate jurisdiction pursuant to 15 U.S.C. § 78y(a).

## DISCUSSION

Miller argues that in reviewing his request to expunge or set aside his censure, the SEC erroneously applied the standard enunciated in *Swift.* In *Swift,* petitioners sought to modify an injunction entered by consent, citing changes in their industry. The Supreme Court held that these changes were not sufficient to warrant a modification of the injunction, and stated that "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions" would suffice to modify the injunction, which consisted of ongoing restrictions on their conduct. *Id.,* 286 U.S. at 119, 52 S.Ct. at 464.

Miller contends that his situation is inapposite to *Swift* because he does not wish to engage in conduct in derogation of an order with present restrictions, but instead wishes to delete the order from the SEC's records as it pertains to him because it should not have been entered in the first place. He also contends that the *Swift* standard, which governs modification of the conditions of an injunction or a consent decree with ongoing restrictions, *see, e.g., United States v. Loew's Inc.,* 882 F.2d 29, 33 (2d Cir.1989) (modifying

a consent decree with ongoing restrictions in light of changed circumstances), should not apply when a petitioner seeks to expunge or delete a consent order.

Instead, Miller urges that the correct appellate standard of review of the SEC's denial of his petition to vacate the censure is the one we announced in *King–Seeley Thermos Co. v. Aladdin Indus.*, 418 F.2d 31 (2d Cir. 1969). In *King–Seeley*, we reviewed an appeal seeking modification of an injunction in a trademark case. We determined that the case was not like *Swift*, which involved a "sharp conflict between wrong-doing and right-doing," but rather involved "the need for drawing the line between two kinds of right-doing." *Id.* at 35. While recognizing the reasoning in *Swift* that a change in law or fact is the clearest basis for modifying an injunction, we also recognized that sometimes the power of equity may serve to modify an injunction if "in light of experience . . . [it becomes clear] that the decree is not properly adapted to accomplishing its purposes." *Id.* Although in *King–Seeley* we expanded the *Swift* standard, it was still in the context of modifying an injunction that imposed ongoing restrictions.

No matter which standard is used here, Miller's substantial delay in seeking to vacate his censure undercuts his contention that had he known of the NYSE letter, he would not have entered into a consent decree but instead would have asked for an adjudication of the charges against him. He knew of the existence of the letter from the NYSE within days of the censure, yet failed to object to the censure at that time. He waited a full six years to seek this relief. In denying his petition for review, we have looked not only at the number of years that have elapsed, but also at Miller's explanation for the delay. In this case, Miller had all of the information that he needed to protest the consent order when he obtained the letter. Nevertheless, Miller does not tell us why he could not have objected to the consent order soon after discovering the letter.

Miller argues that the delay was actually necessary in order to establish his reputational harm, specifically that the censure "has continued to have a material impact on [him] in the financial services industry, hampering his effectiveness and career development." But he should not have needed an extended period of time to establish harm. The harm should have been obvious as soon as the consent order was entered barring him from certain employment activities for up to twelve months. We fail to see how it would take over six years from the time the consent decree was entered to establish harm, reputational or otherwise.

The Tenth Circuit has held that it is not enough to merely allege "[c]ontinuing embarrassment . . . in business relationships" as the basis for dissolving or modifying a decree. *S.E.C. v. Jan–Dal Oil & Gas*, 433 F.2d 304, 306 (10th Cir.1970). In Miller's situation, where there were no longer any present restraints, only the record of a past sanction, the plea for relief is even less compelling.

Miller cites to an SEC administrative proceeding, *In re Munro J. Silver*, Administrative Proceeding File No. 3–7496 (Order of Aug. 9, 1991), to support his position that delay in seeking relief from the SEC was necessary to show the detrimental effect of the recorded censure on career opportunities. At oral argument Miller stated that in the *Silver* proceeding the SEC suggested that a longer passage of time was more appropriate for reviewing a censure. We find this to be an unavailing argument here for two reasons.

First, in *Silver*, the SEC granted relief to a petitioner who had been subject to a thirty year permanent bar preventing him from associating with regulated entities absent SEC approval. Because the SEC had granted consent without restriction to associate with regulated entities each time Silver applied, the SEC ultimately lifted the permanent ban so that Silver could avoid the time and expense of seeking approval each time he changed positions. Unlike Silver, Miller had no such ongoing restrictions. The SEC sanctioned him for a twelve month period which expired in 1987. Miller, therefore, was not asking the SEC to relieve him of any present restrictions, but rather to erase his past record of wrongdoing so that he could lawfully avoid having to disclose it.

Second, there is no indication that the SEC favors delay in bringing petitions to vacate consent decrees. Indeed, the SEC argues persuasively that in this case, where a consent order was entered with no evidentiary hearing, delay would substantially prejudice the Commission. If sanctioned parties easily are able to reopen consent decrees years later, the SEC would have little incentive to enter into such agreements. There would always remain open the possibility of litigation on the merits at some time in the distant future when memories have faded and records have been destroyed.

### CONCLUSION

We conclude that there is no valid reason for Miller to have delayed bringing to the SEC his petition to vacate his consent order of censure. In light of the unreasonable delay and substantial prejudice that the SEC would experience if it had to reexamine the case at this time, the SEC did not err in refusing to grant the requested relief, and we deny the petition for review.