COMMODITY FUTURES TRADING
COMMISSION, Plaintiff,

v.

Thomas Edmund KELLY,
et al., Defendants.

No. 98 CIV 5270 (JSR).

United States District Court,
S.D. New York.

Sept. 10, 2010.

See also 1998 WL 1053710.

Marrero Ernesto Jr., Commodity Futures Trading Commission Division of Enforcement, New York, NY, for Plaintiff.

Joseph Aronica, Duane Morris LLP, Washington, DC, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On November 3, 1998, the Court entered a consent order of permanent injunction and other relief (the "Consent Order") against defendant Thomas Edmund Kelly in the above-captioned action, which, among other things, permanently barred Kelly from trading commodity futures contracts, from engaging in other commodities-related activities, and from registering with the Commodity Futures Trading Commission (the "CFTC"). Pending before the Court is Kelly's motion to dissolve this injunction so that Kelly can pursue registration as an investment advisor. The Court received full briefing on this motion and held oral argument on July 1, 2010. After careful consideration, the Court hereby denies the motion for the reasons that follow.

By way of background, on July 23, 1998 Kelly pleaded guilty before the Honorable Robert P. Patterson to a one-count criminal information. This information, filed in tandem with the complaint in the instant CFTC civil enforcement action, charged Kelly with engaging in a two-year conspiracy to commit wire fraud and wilfully violate certain provisions of the Commodity Exchange Act (the "Act"). In particular, the information and civil complaint charged Kelly with a scheme to violate the Act with the assistance of co-defendant Andrew Rhee, whereby Kelly stole confidential information from his employer, John W. Henry & Co. ("JWH"), regarding JWH's planned futures trading and then provided that information to Rhee, who used that information to trade ahead of JWH on more than one hundred occasions.

See Decl. of Laura Martin, 6/15/10 ("Martin Decl."), Exs. A (CFTC civil complaint) & B (criminal information). The information and complaint alleged that the profits from these "front-running" activities amounted to over $4.7 million and that at least $500,000 of these profits were given to Kelly. Id.

As noted, in November 1998 the Court entered the Consent Order approved by Kelly and the CFTC. In addition to imposing the permanent injunction described above, the Consent Order indicated that Kelly and Rhee were jointly and severally liable for disgorgement in the amount of $4,735,000 in ill-gotten gains (of which Kelly received approximately $400,000). But based on information Kelly provided to the CFTC regarding his financial condition, the Order waived all but $291,938 of the disgorgement amount as to Kelly. Decl. of Joseph J. Aronica, 5/24/10, Ex. 1 (Consent Order), at 5. The Consent Order also provided the Court with continued jurisdiction for purposes of implementing the Order and "to entertain any suitable application or motion for additional relief within the jurisdiction of this Court." Id. at 7.

On December 10, 1998, Judge Patterson sentenced Kelly to 33 months' imprisonment, followed by three years' supervised release. Martin Decl. Ex. C (criminal docket sheet). Prior to his sentencing, Kelly wrote a letter to Judge Patterson expressing remorse for his offense and explaining that he committed the crime while he was leading a "double life" and addicted to alcohol. Id. Ex. D (letter dated 10/12/98). In this letter, he noted that "the one thing I have trained myself for since the 7th grade and was very talented at, trading, is something I will never be able to do again." Id.

In the instant motion, brought pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure, Kelly seeks to dissolve

the injunction so that he can pursue a career as an investment advisor. According to Kelly, the permanent injunction carries collateral consequences that will make it very unlikely that the Securities and Exchange Commission and Connecticut regulatory authorities will approve his registration as an investment advisor. In support of this motion, Kelly has submitted a number of letters from his relatives, friends, and colleagues testifying to his rehabilitation and personal integrity. Kelly's motion argues that the punitive goals of the criminal justice system have amply been satisfied by his criminal sentence and that there is no longer any reason to leave the permanent injunction in force.

The CFTC strenuously opposes the requested relief. In its view, the standard for modification of an injunction is a difficult one for a movant to meet, and here, the CFTC argues, Kelly has not made the requisite showing of an unforeseen change in circumstances. The CFTC also objects on evidentiary grounds to the Court's consideration of the letters submitted in support of Kelly's motion.

■ For purposes of evaluating this motion, the Court credits the portrait of Kelly that emerges the letters that accompany his motion.[1] These letters depict a man who has conducted himself impeccably since the onset of the criminal investigation. By all accounts, since his release from incarceration Kelly has been a responsible husband and father, trusted friend, successful businessman, and active member of the community. The CFTC argues, however, that a showing of compliance and rehabilitation can never by itself amount to the "changed circumstances"

that may, in a court's discretion, permit modification of an injunction's prospective application. While this may be the law in some Circuits, *see, e.g., SEC v. Advance Growth Capital Corp.,* 539 F.2d 649, 652 (7th Cir.1976) ("[O]bedience to the mandate ... provides no justification for dissolving the injunction. Compliance is just what the law expects." (footnote and internal quotation marks omitted)), it is just as clearly not the law in others, *see, e.g., SEC v. Thermodynamics, Inc.,* 464 F.2d 457, 461 (10th Cir.1972) (stating that "[i]n reality," where the defendant is an individual, "the passage of a substantial period of time with full compliance and with no other violations ... is about all an individual can show under these circumstances"). And still other Circuits take an intermediate view. *See, e.g., SEC v. Coldicutt,* 258 F.3d 939, 943 (9th Cir.2001) (describing and adopting the prevailing view that "extended period of compliance is a factor supporting termination of an injunction, but more is required"). In the Court's view, the decisions of the Second Circuit, while not precisely on point, allow but do not compel a court to alter such an injunction based on substantial compliance. *See, e.g., King–Seeley Thermos Co. v. Aladdin Indus., Inc.,* 418 F.2d 31, 35 (2d Cir.1969) (Friendly, J.) ("While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes.").

■ However, while Kelly's exemplary conduct since 1998 is to be commended,

---

1. The Court notes that while CFTC's evidentiary objections are not altogether without force, certain of them verge on the picayune. *See, e.g.,* CFTC Mem. Opp., 6/15/10, at 20 (objecting to Kelly's wife's passing reference in her letter to Kelly's difficult childhood on the ground that she lacked personal knowledge of his childhood). In any event, the Court need not consider these objections further because they are not material to its determination of the motion.

the Court ultimately declines to exercise its discretion to modify the injunction based on this showing. This is because the record here indicates that the permanent bar on Kelly's participation in the futures industry and registration before the CFTC was, at the very least, an implicit premise underlying the consensual resolution of the criminal and CFTC actions against him. As to the criminal case, the record here shows that Kelly acknowledged that he would never trade again as part of his request for leniency from Judge Patterson. And while there is no clear record of the circumstances surrounding the disposition of the instant CFTC action, there is every indication that the CFTC made certain concessions in reaching this disposition—including, at least, seeking less than the maximum disgorgement amount—and that the permanent injunction was part of the overall bargain. It is undisputed that Kelly could have opposed and litigated the relief requested by the CFTC, but he agreed to a consensual disposition instead. The Court thus declines Kelly's invitation to disturb this implicit bargain among him, the CFTC, and the sentencing court.

■ Furthermore, to permit modification of the injunction here based on mere compliance would threaten the efficacy of this remedy as a tool in furtherance of the public interest. Kelly argues that the injunction here is punitive rather than remedial, and that it therefore may be dissolved once its punitive purposes are effectuated. The Court disagrees. The law requires that in order to obtain a permanent injunction, the CFTC must show that "there is a likelihood that, unless enjoined, the violations will continue." *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250–51 (2d Cir.1986). In addition, "[a] district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct." *Id.* at 1251. While Kelly could have put the CFTC to its proof that

these prerequisites were met and that such an inference should be drawn, he did not do so, but rather consented to the injunction's entry. The fact that the risk of future violations has not materialized to date does not, by itself, indicate that the injunction no longer serves the public interest.

For the foregoing reasons, the Court declines to modify the Consent Order and hereby denies Kelly's motion. The Clerk of the Court is directed to close document number 12 on the docket of this case.

SO ORDERED.