**TETRA SALES (U.S.A.), A DIVISION OF WARNER–LAMBERT CO. and Salamander Books, Ltd., Appellees,**

v.

**T.F.H. PUBLICATIONS, INC., Appellant.**

**No. 417, Docket 87–7603.**

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1987.

Decided Feb. 3, 1988.

Albert Robin, Robin, Blecker & Daley, New York City (Howard B. Barnaby, New York City, Douglas M. Calhoun, Calhoun & Brady, Spring Lake Heights, N.J., of counsel), for appellant.

Arthur J. Ginsburg, Frankfurt, Garbus, Klein & Selz, P.C., New York City, for appellees.

Before FEINBERG, Chief Judge, OAKES, and PRATT, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from an order of the United States District Court for the Southern

District of New York, Peter K. Leisure, Judge, granting a preliminary injunction requiring T.F.H. Publications, Inc., to comply with the terms of a stipulation of settlement entered into between the parties in an action commenced for, among other things, alleged violations of section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (1982). We affirm in part and vacate in part and remand.

Tetra Sales (U.S.A.) ("Tetra"), a division of Warner–Lambert Co., and Salamander Books, Ltd. ("Salamander"), an English corporation, commenced this action against T.F.H. Publications, Inc. ("T.F.H."), claiming that T.F.H.'s publication of a series of books known as the Complete Introduction Series infringed upon the plaintiffs' series of fish- and pet-keeper's guides. Plaintiffs alleged imitation of trade dress constituting a false designation of origin in violation of section 43(a) of the Lanham Act as well as common law unfair competition, trade dress infringement, palming off, unjust enrichment, and dilution in violation of section 368–d of the New York General Business Law (McKinney 1984). After a hearing on February 17, 1987, the district court denied plaintiffs' application for a temporary restraining order. The parties then entered into expedited discovery in preparation for a hearing on the plaintiffs' motion for a preliminary injunction, culminating instead in the entry of a Stipulation of Settlement and a Final Judgment upon Consent.

The complaint had objected to the size and format of defendant's Complete Introduction series of pet books, including the color scheme, the photographic layout, and other external graphics on the front and back covers. Because T.F.H. had a substantial number of such offending books in inventory, it agreed to alter the format of its books in the future in consideration of the plaintiffs' agreement to allow T.F.H. to sell this existing inventory. The size of the new front and back covers was to be 5¼ inches wide by 8½ inches in height, plus or minus ¹⁄₁₆ inch. T.F.H. also agreed to display its name and logo on the new front cover of the hardback and softback books of the Complete Introduction series in type not smaller than 13–point lower case height. It was agreed that the phrase "A Complete Introduction" would be placed on the front covers below the title of the series and above the photograph without textual material, and that the photograph on these new front covers would not be framed in white. T.F.H. agreed specifically not to use the color known as "Salamander green" (found on Salamander's guide book entitled "Aquarium Plants") on the front cover of its books relating to fish, or "Salamander beige" (the shade used on the Salamander guide book entitled "Hamsters and Gerbils") on its books about small animals, reptiles, amphibians, or other pets. New back covers were to be "identical in appearance to a cover annexed as Exhibit C," and T.F.H. agreed that future hardback editions would continue to have rounded spines. T.F.H. also agreed to destroy all covers not currently bound to books, and to sticker its existing inventory of books with a T.F.H. logo not smaller than 13–point lower case "small x" height.

The Stipulation provided that T.F.H.'s then current inventory of allegedly infringing hardback and softback books would be "set forth on a schedule in a form annexed hereto as Exhibit D" [¶ 11]. Paragraph 11 specifies that the current inventory of hardback and softback editions, as well as the unbound infringing covers of T.F.H.'s Complete Introduction series "are stored, warehoused, and/or kept in the following locations," naming three locations in Neptune City, New Jersey (11 West Sylvania Avenue, 85 West Sylvania Avenue, and One T.F.H. Plaza), and one in Neptune, New Jersey (Route 33 Memorial Parkway). T.F.H. agreed that its inventory figures could be verified at Tetra and Salamander's option by Price Waterhouse & Co., and also agreed to permit Price Waterhouse to inspect without notice the manufacture of new hardback and softback editions. The parties stipulated that if T.F.H. violated any provision of the settlement, Tetra and Salamander would suffer irreparable injury entitling them to injunctive relief. The Stipulation of Settlement covered the United States and Canada; litigation also had

been commenced by Salamander in England where a hearing on Salamander's motion for a preliminary injunction had been scheduled for April 6.

Agreement was reached among counsel as to the Settlement even though the schedule of inventory was never prepared in the form annexed as Exhibit D. Rather, a computer printout dated April 2, 1987, was attached to the stipulation, but it showed books only at warehouse "001," not at four locations.

Salamander did not execute the stipulation until April 15, 1987, and as late as April 20, 1987, Tetra's counsel wrote to the district court that "[w]e wish to advise the Court that settlement discussions have taken place, and that the parties are currently trying to consummate the settlement." The Stipulation and Final Judgment upon Consent were not forwarded to the district court until April 29, 1987, and were entered on May 5, 1987.

This happy state of affairs lasted only one month. On June 5, 1987, the plaintiffs moved for a preliminary injunction alleging that T.F.H. had violated certain provisions of the Stipulation of Settlement and Final Judgment, and sought to hold T.F.H. in contempt and to recover damages and attorney's fees. Three violations were claimed. First, the new hardback books were ¼ inch taller than agreed upon (or ³⁄₁₆ inch taller, allowing for the ¹⁄₁₆ inch leeway permitted by the stipulation). At 8¾ inches the height of T.F.H.'s new publications was said to be identical to the height of plaintiffs' guide series. The second claim was that T.F.H. had violated Paragraph 9 of the stipulation in locating the International Standard Book Number ("ISBN") on the righthand side of the back cover instead of on the left as shown on the sample annexed to the stipulation. T.F.H. admitted both violations, but explained that it had based its measurements on the size of the pages of the books, rather than their covers, and had interpreted the agreement to require only vertical relocation of the ISBN to the middle of the back cover but not to one side or the other. T.F.H. agreed to make the necessary changes in future hardback books.

A third claim was that on May 12, 1987, Tetra's accountants, Price Waterhouse, had inspected the T.F.H. inventory and determined that it contained some 63,093 volumes more than appeared in the April 2, 1987, computer printout attached to the Stipulation. Plaintiffs' counsel, Arthur Ginsburg, wrote a rather telling and perhaps self-serving letter dated April 8 to T.F.H. counsel Douglas Calhoun to "please be advised that the inventory report dated April 2, 1987, which you provided to me on that date, shall be deemed T.F.H.'s designation of inventory pursuant to Paragraph 11 of the Stipulation of Settlement. I agreed to accept the computer readout as constituting Exhibit D to the Stipulation of Settlement." The computer printout, as we say, had not been labeled as Exhibit D.

On May 7, 1987, Attorney Ginsburg advised Attorney Calhoun that T.F.H. was in violation of Paragraphs 3 and 9 of the Stipulation (pertaining to size of the covers and the ISBN). On May 12 the president of T.F.H., doubtless aware of mounting attorneys' fees, wrote to Tetra's general manager responding to the May 7 Ginsburg letter. Meanwhile, on May 11, Attorney Ginsburg had called Attorney Calhoun to find out why he had received no answer to the May 7 letter. Calhoun advised that he would have to talk with his client and would get back to Ginsburg. When Calhoun did not do so by May 19, Ginsburg wrote another letter to Calhoun stating that he had learned for the first time on May 18 that there was a wide discrepancy between the inventory set forth in "Exhibit D" and the actual inventory as inspected by Price Waterhouse. On May 28 Calhoun replied to Ginsburg that it was his understanding that the discrepancy represented completed work or work in shipping which had not been logged onto the computer as of April 1. He went on to say, "As you are aware at the time you were at TFH's office on April 2, you were insistent upon having an immediate inventory figure. The inventory figure that you were provided with came from the most recent computer printout." Calhoun explained that there is ap-

proximately a two-week delay between completion of the books and their entry into the computer, so that the inventory figure on the printout reflected inventory "technically as of March 15." In an affidavit signed on June 10, a vice president of T.F.H. further stated that plaintiffs' counsel had been advised that the computer printout attached to the stipulation "only reflected inventory at One T.F.H. Plaza that had actually been logged onto the computer as of that date and did not reflect completed books at the bindery (85 West Sylvania Avenue) or books which may have been delivered over to One T.F.H. Plaza but not yet entered onto the computer." The affidavit reiterated the explanation made to Tetra's general manager that there is up to three weeks of lag time between books leaving the bindery and their inclusion in the inventory evaluation report, accounting for the additional volumes. The Tetra general manager's reply affidavit confirms "that defendant advised me of the purported reason for the discrepancy between the Inventory Report and the Price Waterhouse report," but rejects the explanation as "not sufficient," because "plaintiffs contend that TFH's admitted excess inventory violated Paragraph 11 of the Stipulation and Paragraph 4 of the Final Judgment."

In a hearing held at the end of a trial day, the district court heard conflicting presentations by counsel, but took no evidence. Attorney Calhoun said in effect that there was a misunderstanding on the inventory matter. Tetra's attorney, Ginsburg, was told of the inventory discrepancies, and, moreover, Calhoun argued, Tetra signed the agreement before receiving the computer printout. Ginsburg claimed that he was not told that the printout understated the inventory, nor had he known the figures were wrong. He said he asked Calhoun about a reference in the inventory report to "001" and that Calhoun answered that the number showed the location of the inventory, namely, at One T.F.H. Plaza. Ginsburg denied being told of the "nuances" pertaining to work in process. In rebuttal Calhoun pointed out that the last paragraph of Ginsburg's telling letter of April 8 to him had said:

> Finally, regarding the inventory report discussed above, you advised me that the code numbers referred to the warehouse location of the books and that they are all located at One T.F.H. Plaza. Please advise me as soon as possible if there are additional locations for the storage of the subject books as we wish to advise our accountants where your client's inventory is situated.

Calhoun added, "If I had already advised Mr. Ginsburg that the books were all only located at One T.F.H. Plaza, why is he as of April 8 asking me to advise him of those locations?"

After hearing counsel's statements and representations, the district court took a brief recess. On its return the court rather pointedly told counsel that it wished "the lawyers were spending more time endeavoring to reach accommodations [*sic*] rather than coming to the Court seeking relief." (Parenthetically, we agree. We, too, endeavored to send counsel back to our Civil Appeals Management Program after hearing the oral argument on this appeal, but to no avail.) The district court then dictated its order into the record. After reviewing the facts pertaining to the settlement and the claims of the parties, the court found that the size of the books violated Paragraph 3 of the Stipulation and Paragraph 4 of the Consent Order, and that the placement of the ISBN violated Paragraph 9 of the Stipulation and Paragraph 4 of the Consent Order. Without resolving the question whether Tetra's counsel had actually been advised of the inventory discrepancies as claimed by counsel for T.F.H., the court also found that "[p]laintiffs have demonstrated a likelihood that defendant violated Paragraph 11 [of the stipulation governing inventory]." The court then ordered that the plaintiffs were entitled to preliminary injunctive relief, having shown probable success on the merits of their claims of T.F.H.'s violations of Paragraphs 3, 9, and 11 of the Stipulation and irreparable harm as acknowledged in Paragraph 19 of the Stipulation. The court, however, declined to issue a contempt order, primari-

ly because the court believed T.F.H.'s past violations were largely inadvertent and because T.F.H. had demonstrated, in its papers and during the hearing, its willingness to remedy any shortcomings in the future. Finally, the court allowed plaintiffs to recover their damages, attorney's fees, and costs in connection with the then present motion. This appeal was taken.

## DISCUSSION

T.F.H. argues first that the district court's preliminary injunction order should be vacated for indefiniteness, since Fed.R. Civ.P. 65(d) provides that every order granting an injunction "shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." *See Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974) ("the specificity provisions of Rule 65(d) are no mere technical requirements"); *Diapulse Corp. of Am. v. Carba, Ltd.,* 626 F.2d 1108, 1111 (2d Cir. 1980). We have held in *Clarkson Co. v. Shaheen,* 544 F.2d 624 (2d Cir.1976), however, that "a court's failure to comply with the specific requirements of Fed.R.Civ.P. 65(d) as to the form of an injunction does not render the order void." *Id.* at 632 (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2955, at 538 (1975)). Here it seems to us quite plain that, insofar as it incorporates the terms of Paragraphs 3 and 9 of the Stipulation, the order of the court gives clear direction to T.F.H. of its duties. However, in requiring T.F.H. to refrain from violations of Paragraph 11, the injunction fails to "prevent uncertainty and confusion on the part of those faced with" compliance with the order. *Schmidt v. Lessard,* 414 U.S. at 476, 94 S.Ct. at 715. Paragraph 11 imposes no duty on T.F.H. to act or refrain from acting, but merely identifies T.F.H.'s "current inventory for ... its alleged infringing hardback and softback covers." Not only did the court ignore the fact that three additional locations for that inventory are specified in Paragraph 11, it failed to resolve the questions whether the disputed inventory was in fact work in process at those other locations, or whether counsel to the plaintiffs knew that the computer printout attached to the Stipulation of Settlement reflected only a partial inventory. Most importantly, we do not know what the injunction requires T.F.H. to do in respect to the inventory, if indeed it was in violation of the Stipulation.

One possible interpretation of the order is that T.F.H. is to destroy the excess inventory, but neither the injunction nor the Stipulation specify that. Moreover, so many questions are involved in interpreting Paragraph 11—the credibility of each side's counsel as to what was said about the computer printout; the effect of the explicit reference in Paragraph 11 to three additional locations of inventory, and of Attorney Ginsburg's admitted awareness as of April 8 that the printout covered only one location; the effect, if any, of subsequent correspondence between counsel or the parties; and possibly even a determination of the effective date of the Stipulation—that the final question as to whether the excess inventory must be destroyed is one more appropriately reserved for trial on the merits.

To carry this point one step further but without predetermining the facts, we note that Tetra had the express right to have its accountants inspect the four inventory locations specified in Paragraph 11 and verify the inventory figures prior to execution of the Stipulation. Instead Tetra signed the Stipulation before receiving any such verification. If the discrepancy between the computer printout and the actual inventory is now so vastly material to plaintiffs, it may be that their remedy lies in rescission of the Stipulation rather than in an injunction. We therefore vacate that portion of the injunction that pertains to Paragraph 11, because we think that as to that provision the finding of the district court that plaintiffs have demonstrated a likelihood of success on the merits is erroneous at this stage.

In conclusion, like the district court, we view this as a case of wasted resources. It seems to us that a great deal of time, effort, and money has been expended in

**886**

quibbling over minutiae (the violations of Paragraphs 3 and 9) and, regarding Paragraph 11, in litigating what was plainly a lawyer's botch. Either T.F.H.'s Attorney Calhoun made a mistake to his client's detriment by furnishing the computer printout without written qualification specifically pointing to the omitted inventory, or Attorney Ginsburg disserved his client by permitting Tetra to sign the stipulation of settlement before a complete, certified inventory was attached to the stipulation as Exhibit D. Where the parties are litigating through an appeal a matter largely arising out of lawyers' error, consideration of sanctions seems appropriate. Obviously, when after hearing argument this court suggested that counsel attempt to work out the matter, it intended to save counsel a measure of embarrassment and the parties some expense. They, or one of them, did not see fit to accommodate, and therefore we have been required to issue this opinion.

If the parties continue to resist reaching an accommodation, we believe the district court on remand should hear the matter fully and finally on the merits, giving careful consideration to the question whether, if it orders destruction of the books in inventory held by T.F.H. that are in excess of those shown on the computer printout, the plaintiffs should be required to post a bond. The matter of a bond is moot at present since the preliminary injunction as we enforce it merely maintains the status quo. *See* Fed.R.Civ.P. 65(c); *Ferguson v. Tabah,* 288 F.2d 665, 675 (2d Cir.1961); *Federal Prescription Serv., Inc. v. American Pharmaceutical Ass'n,* 636 F.2d 755, 759 (D.C.Cir.1980); *see also Digital Equip. Corp. v. Emulex Corp.,* 805 F.2d 380, 383 (Fed.Cir.1986).

Judgment in accordance with opinion.