TETRA SALES (U.S.A.), A DIVISION OF WARNER–LAMBERT COMPANY, and Salamander Books, Ltd., Plaintiffs,

v.

T.F.H. PUBLICATIONS, INC., Defendant.

No. 87 Civ. 0922(PKL).

United States District Court, S.D. New York.

Oct. 31, 1989.

Frankfurt, Garbus, Klein & Selz, P.C., New York City (Arthur J. Ginsburg, of counsel), for plaintiffs.

Calhoun & Brady, Spring Lake Heights, N.J. (Douglas M. Calhoun, of counsel), for defendant.

LEISURE, District Judge.

The issue now before the Court arises out of a Stipulation of Settlement ("Stipulation") entered between the parties and a Final Judgment on Consent ("Final Judgment") approved by the Court on May 5, 1987. Defendant has moved for a modification of the Stipulation and Final Judgment under Fed.R.Civ.P. 60(b). Magistrate Kathleen Roberts issued a Report and Recommendation dated July 13, 1989, which found that the Stipulation and Final Judgment as entered creates undue hardship for defendant and thus recommended that the modification be granted. For the reasons outlined below, the Court declines to follow the Magistrate's recommendation and denies defendant's motion to modify the Stipulation and Final Judgment.

BACKGROUND

This is a trademark action involving books about small animals. Plaintiffs publish a series of books, known as the Guide Series, on a variety of household pets. Defendant also publishes a series of pet books, known as the Complete Introduction Series. The parties agreed in the Final Judgment that the books published by defendant were "confusingly similar in size, format, trade dress and overall appearance to the front and back covers" of those

books published by plaintiffs. Final Judgment ¶ 3.

The signing of the Stipulation and the entry of the Final Judgment did not end the conflict over these pet books. In May 1987, only a month after the Final Judgment was approved by the Court, plaintiffs moved for an injunction, claiming that defendant had failed to meet some of the technical requirements of the Stipulation and Final Judgment. In June 1987, after a hearing on the matter, this Court entered a preliminary injunction against defendants. That injunction was affirmed in part and reversed in part by the United States Court of Appeals for the Second Circuit in February 1988. *Tetra Sales v. T.F.H. Publications, Inc.*, 839 F.2d 881 (2d Cir.1988). Both this Court and the Second Circuit viewed most of the issues brought before them on the motion for injunction as unimportant and immaterial. To this effect, then Judge, now Chief Judge, Oakes concluded: "It seems to us that a great deal of time, effort, and money has been expended in quibbling over minutiae." 839 F.2d at 885–86.

The parties now come before the Court, once again disputing the purpose, meaning, and application of the Stipulation and Final Judgment. Defendant desires to have the Court modify the language and meaning of a portion of the Stipulation to allow it to use a cover design on its Complete Introduction Series which would not be permitted under the strict language of the Stipulation. Paragraph 2 of the Stipulation mandates that "T.F.H. shall manufacture, produce, publish, distribute, advertise and sell its Complete Introduction Series only with front and back covers for its hardback and softback publications in the form of the covers annexed hereto." The specifications for the covers are quite specific, mandating that T.F.H. only use boxed-in pictures on their covers and specifying the size of the type and the typeface as well as directing the placement of such items as the computerized price bar-code. Appendix B to Stipulation.

T.F.H. now wishes to be released from the strictures of the Stipulation it signed two years ago in order to allow it to use what is known as a "full-bleed" cover. On a "full-bleed" cover, the photograph stretches the full length and breadth of the cover rather than being confined to a boxed and bordered space on a portion of the cover. T.F.H. applied to Magistrate Roberts for modification of the Stipulation and Final Judgment under Fed.R.Civ.P. 60(b) to allow it to make this design change, arguing that the Stipulation was unduly restrictive, that the mandated boxed cover in fact created some of the same product confusion that the Stipulation was designed to prevent, and that the use of the "full-bleed" cover would allow T.F.H. to conform its American product line with that in Britain where T.F.H. has entered into a similar stipulation which mandates that it use "full-bleed," rather than boxed-in, covers.

DISCUSSION

Rule 60(b) allows relief from a judgment or order of the court in certain limited circumstances. Magistrate Roberts correctly noted in her Report and Recommendation that the standard for modifying or vacating a judgment has been somewhat mollified in recent years from the severe standard set by Justice Cardozo in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). The Second Circuit has pointed out that the decision to grant relief under Rule 60(b) is left "to the sound discretion of the district court with appellate review limited to determining whether that discretion has been abused." *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986). *See also Griffin v. Swim–Tech Corp.*, 722 F.2d 677, 680 (11th Cir.1984); *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir.1981).

The range of options open to the district court is not as wide as the above language would imply. The Second Circuit instructs district courts that "final judgments should not 'be lightly opened'.... Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer*, 793 F.2d at 61, *quoting Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981).

All discussions of such relief from a judgment begin necessarily with *Swift*, a case involving allegations of widespread antitrust violations in the meatpacking industry. In that case the parties had entered into a consent decree in 1920, designed to end monopolization practices by the defendant meatpackers. The consent decree imposed a series of restraints on the meatpackers aimed at increasing competition and ending unfair practices in the industry. After a decade, the meatpackers became unhappy with the restrictions to which they had agreed and sought a modification of the final decree. The district court granted some relief, and the Supreme Court reversed.

Justice Cardozo, writing for the Court, recounted in detail the history of the illegal and offensive actions taken by the meatpackers and noted that at least some illicit practices had continued, even after the entry of the consent decree. *Swift*, 286 U.S. at 118, 52 S.Ct. at 463. Given these continued violations, the severity of the harmful acts committed by defendants before entry of the decree, and the ongoing threat of harm to competitors if defendants were allowed freer reign, Justice Cardozo found that modification of the decree was unwarranted.

In reaching this finding, Justice Cardozo used strong language opposing the grant of modification, which survives to this day with respect to consideration of Rule 60(b) motions:

> The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying they are victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

*Id.*, at 119, 52 S.Ct. at 464. This paragraph was the foundation of the law on modification of judgments for almost 40 years. In 1968, the Supreme Court revisited the issue in another antitrust case, *United States v. United Shoe Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968).

Justice Fortas, writing for the Court, examined Justice Cardozo's opinion in *Swift* as a whole and determined that, in fact, the case did not stand for as strong a limitation on the grant of modification of judgments as the above paragraph would seem to indicate. Justice Fortas noted that Justice Cardozo had recognized the power of the court to modify decrees whether entered by the court or by consent, and that Justice Cardozo had framed the question for the Court as being whether enough had been shown to justify the use of the court's equitable powers. *United Shoe*, 391 U.S. at 248, 88 S.Ct. at 1499. Justice Fortas then noted that Justice Cardozo's decision was based more on his view of the bad conduct of defendants—and that it was those same defendants requesting the modification—and not on any general opposition to modification of judgments. *United Shoe*, 391 U.S. at 248–49, 88 S.Ct. at 1499.

Based on this reanalysis of *Swift*, the Court in *United Shoe* reversed the denial of a requested modification of the extensive decree entered in that case. Justice Fortas distinguished *Swift*, noting that in *United Shoe* the request for modification came from the plaintiff, not the defendant, and that the requested modification was designed to further the purposes of the original decree, not to escape them, as was the case in *Swift*.

*United Shoe* has been viewed as a loosening of the tight reign on the modification of judgments imposed by the language of *Swift*. Indeed, following the teaching of *United Shoe*, the Second Circuit has allowed district courts an increased range of action in modification of judgments in recent years. Soon after the decision in *United Shoe*, the Second Circuit considered the request of a defendant in a trademark action to modify a court-ordered decree which limited defendant's ability to use the word "thermos," even though that term had been declared generic by the district

court. The Second Circuit found that, in light of *United Shoe,* the modification of the judgment requested was appropriate. *King–Seeley Thermos v. Aladdin Industries, Inc.,* 418 F.2d 31 (2d Cir.1969). Judge Friendly followed the Supreme Court's lead in *United Shoe* and noted that the traditional reading of *Swift* was unnecessarily rigid. *King–Seeley,* 418 F.2d at 34.

Instead of searching for extraordinary circumstances that might justify a modification under *Swift,* Judge Friendly focused, first, on the level of wrong-doing involved in the action, and, second, on whether the decree was continuing to serve its original purposes. *King–Seeley,* 418 F.2d at 35. Judge Friendly found that the level of wrong-doing in *Swift* was a critical factor in Justice Cardozo's opinion, and that such wrong-doing was simply not present in *King–Seeley.* Thus, Judge Friendly noted that

> While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes.

418 F.2d at 35. The Court made it clear, however, that this invocation of the equity power was not to be read as an invitation to modify judicial decrees at will.

> While we hold there is power to modify an injunction even in the absence of changed conditions, the power should be sparingly exercised. "Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided."

*Id., quoting System Federation v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961).

Fourteen years later, Judge Friendly returned to the same issue in a very different context. In *New York State Ass'n for Retarded Children v. Carey,* 706 F.2d 956

(2d. Cir.1983), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983), one of many cases arising out of the squalid conditions at the Willowbrook State School, Judge Friendly again rejected a "drastic" reading of the *Swift* standard and reaffirmed his analysis in *King–Seeley.* 706 F.2d at 969. The Court noted that the proposed modification in *Carey,* like the one in *King–Seeley,* and unlike the one in *Swift,* was designed to further the purpose of the original decree, and the conflict over the modification was buttressed with significant arguments on both sides. "When a case involves drawing the line between legitimate interests on each side, modification will be allowed on a lesser showing." 706 F.2d at 969.

The Second Circuit revisited the question of modifications under Rule 60(b) earlier this year. In *Kozlowski v. Coughlin,* 871 F.2d 241 (2d Cir.1989), Judge Kaufman addressed the request by defendant New York State Corrections Commissioner to modify a consent decree limiting the ability of the Department to restrict visitation privileges, and undertook a thorough analysis of the law regarding modification. Quoting from Judge Friendly's opinion in *Carey,* Judge Kaufman explained the standard followed by the Court in reaching its ruling refusing to allow modification of the decree.

> Especially in a case where the movant does not act "in derogation of the primary objective of the decree" and the "case involves drawing the line between legitimate interests on each side," flexibility should be the key to the solution.... The analysis must identify the essential purpose or purposes of the decree in question, and weigh the impact of the proposed modification on that ultimate objective.

871 F.2d at 247–48 (citation omitted). *See also, Badgley v. Santacroce,* 853 F.2d 50, 53 (2d Cir.1988).

Importantly for the case now before this Court, Judge Kaufman applied the framework set forth above to the modification requested by defendant Commissioner. The Court stated that

To alter the current equation, the [defendant] bears the burden of clearly showing that quantum of necessity needed to convince [the Court] of the need for action. This done, he must show that each change prunes the decree deftly, changing only as much as is required and leaving the ability to obtain the ultimate goal intact.

871 F.2d at 248.

The Court has completed a thorough review of the evidence and moving papers in this matter and finds that the defendant has failed to meet the burden required to convince the Court to modify the Stipulation. Mindful of Judge Friendly's admonition in *King–Seeley* that the power to modify should be used sparingly, 418 F.2d at 35, the Court turns to analyzing the defendant's request in light of the goals of the Stipulation and Final Judgment.

Defendant requests that the Court exercise its equitable power to modify the explicit, negotiated terms of the two-year-old Stipulation to allow a change in cover designs to one it claims would, first, reduce the sort of confusion that the Stipulation was designed to avoid and, second, allow conformity between the defendant's British and American product lines. Defendant's second justification is not sufficient, alone, or in concert with any other argument, to justify the intervention of the Court. The Stipulation at issue applies only to publications in North America and has no effect upon and is not affected by defendant's settlement of an action in Britain. Defendant has not shown that the lack of conformity between its British and North American product line will create any hardship beyond inconvenience, and this is not enough to convince the Court of the need for action.

Defendant's argument that the changed covers will avoid the sort of confusion which the Stipulation is designed to prevent, is, facially, more convincing. Defendant claims that since the time of the Stipulation, plaintiffs have changed the covers of some of their publications to a format similar to that which the defendant is required to use by the Stipulation. Defen-

dant's Brief in Support of Notice of Motion at 5. Plaintiffs deny this allegation. Affidavit of Malcolm Little, sworn to on November 7, 1988, ("Little Aff.") ¶¶ 21–22. Defendant's claim that its use of the "full-bleed" cover will avoid future product confusion is evanesced by evidence that plaintiffs have been publishing and distributing books in the Guide Series that use the sort of "full-bleed" format which defendant now wishes permission to use, and that this format was in use by plaintiffs in 1986, before the Stipulation was prepared. Affidavit of Alan Mintz, sworn to on November 8, 1988, ("Mintz Aff.") ¶ 36.

In her analysis of this dispute, Magistrate Roberts appears not to have considered plaintiffs' use of the "full-bleed" format prior to the Stipulation, or plaintiffs' denying making any change of their boxed format which would engender confusion. Report and Recommendation dated July 13, 1989 ("Report") at 8. While the Court agrees with the Magistrate that it cannot be contended that the detailed restrictions in the Stipulations were intended to continue in perpetuity, *id.*, the passage of two years from the date of the Stipulation is not such a long period of time that the Court should rush to make changes in the carefully negotiated agreement between the parties.

Further, the Stipulation is quite specific about the type of cover that T.F.H. is allowed to use. It is a logical extension from this preciseness that it was understood that T.F.H. would not be allowed to use any cover other than that specified on the products covered by the agreement. Further, by agreeing to such specific restrictions on its covers, T.F.H., in essence, surrendered its rights to a free choice of cover designs on the products in question. T.F.H. makes no claim that it did not freely enter into the Stipulation. While it is not necessary to show changed circumstances for a court to modify a judgment, *King–Seeley*, 418 F.2d at 35, a motion under Rule 60(b) is " 'no invitation to relitigation of matter adjudged by the original judgment.' " *Schildhaus v. Moe*, 335 F.2d 529, 530 (2d Cir.1964), *quoting* 7 Moore, *Federal Practice* ¶ 60.26[4]

(1955). *See also, Swift,* 286 U.S. at 119, 52 S.Ct. at 464 ("[W]e should leave the defendants where we find them, especially since the place where we find them is the one where they agreed to be.")

The Magistrate commented in her Report that this is a case similar to *King–Seeley* in that there is no " 'sharp conflict between wrong-doing and right-doing.' " Report at 7, *quoting King–Seeley,* 418 F.2d at 35. The Court does not believe that this is such a clear conclusion. It is true that the Stipulation is explicit that neither party admits fault in this case and that the Stipulation settled not only this action but also an almost identical one filed by T.F.H. in the Superior Court of New Jersey. However, this Court cannot ignore that it was constrained to enter a preliminary injunction against defendant only a month after the entry of the Final Judgment, for its violation of the technical terms of the Stipulation. Violation of a Stipulation so soon after the agreement is not consistent with a finding of the complete absence of wrongdoing on the part of the party now seeking modification.

Further, this Court cannot agree with the Magistrate that " 'the decree is not properly adapted to accomplishing its purposes.' " Report at 8, *quoting King–Seeley,* 418 F.2d at 35. The Stipulation and Final Judgment were designed to end the conflict between these parties by setting standards to avoid the confusion which the parties felt existed between their products. The terms were necessarily specific to assure that changes would not be made which might lead to additional conflict. This is particularly important with these parties who have proven to have deep-set mutual animosities, which are again reflected in the papers before the Court. These parties have filed suit against each other in jurisdictions both domestic and foreign. The previous preliminary injunction action in this case proves that these parties are willing to battle at the slightest provocation.

The Stipulation's purpose must be viewed in light of the depth of conflict in this case. A major purpose of the specificity of the Stipulation is to end conflict. Any change in that particularization is likely only to reopen the battle. In her Report, the Magistrate invited plaintiffs to bring an action if they felt defendant's "full-bleed" covers infringed. From plaintiffs' papers, the Court has little doubt that such an action will be brought.

Thus, there is contested evidence over whether the "full-bleed" covers would in fact reduce confusion. Additionally, there is evidence that plaintiffs already used such covers prior to the signing of the Stipulation, and presumably took those into account in framing the Stipulation. Finally, the Court has determined that a major underlying purpose of the Stipulation was to endeavor to bring some peace to a highly charged situation, in part through specificity and in part through rigid restriction. Accordingly, the Court finds that defendant has failed to bear "the burden of clearly showing that quantum of necessity needed to convince [the Court] of the need for action." *Kozlowski,* 871 F.2d at 248. There is insufficient uncontested evidence that confusion will be created by the continued use of the mandated covers or that defendant will be unduly harmed by the continuation of the stipulated restrictions.

Finally, defendant has failed to "show that each change prunes the decree deftly, changing only as much as it required ..." *Kozlowski,* 871 F.2d at 248. Defendant has requested the use of "full-bleed" covers without any specific restrictions on how those covers would be designed or used. Such a broad modification of an extremely specific clause is contrary to the spirit and letter of the original Stipulation. If the parties had intended that defendant be given wide latitude on its cover design, there would not be detailed descriptions of the placement of bar codes and other secondary items.

The Court feels it necessary to make two final observations. First, defendant submitted a late response to plaintiffs' objections to the Magistrate's Report. The late filing apparently occurred because defense counsel did not receive plaintiffs' objection until after the time to object had passed. In light of this failure in service, the Court chose to make a preliminary review of defendant's response. After that review, the

Court concluded that the response was not germane to its consideration of the Magistrate's Report, and, thus, the Court did not consider the response in reaching this ruling.

Second, the Court is disturbed by the vitriolic nature of the exchanges in the papers presented both to the Magistrate and to this Court, and feels that the problem before it could have been resolved by good faith negotiation rather than by litigation. Accordingly, the Court renews its admonition to the parties made during the preliminary injunction hearing and repeated with approval by the Second Circuit. The Court wishes "the lawyers were spending more time endeavoring to reach accommodations rather than coming to the Court seeking relief." *Tetra Sales*, 839 F.2d at 884.

CONCLUSION

In light of the discussion above, the Court finds that defendant has failed to meet the burden necessary for the Court to intervene and modify the Stipulation and Final Judgment under Rule 60(b).

Accordingly, the Court declines to follow the Report and Recommendation of Magistrate Roberts in this matter dated July 13, 1989. Defendant's motion for modification of the Stipulation and Final Judgment under Rule 60(b) is DENIED.

SO ORDERED.