UNITED STATES of America, Plaintiff,

v.

ENVIRITE CORPORATION, Defendant.

Civ. No. H-89-279 (EBB).

United States District Court,
D. Connecticut.

Nov. 7, 1991.

Cynthia S. Huber, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Ridgeway M. Hall, Jr., Washington, D.C. and W. Richard Smith, Hartford, Conn., for defendant.

## ORDER

ELLEN B. BURNS, Chief Judge.

After *de novo* review and over objection, the ruling of the Magistrate Judge is approved, adopted, and so ordered.

## RECOMMENDED RULING ON DEFENDANT'S MOTION TO REOPEN AND SET ASIDE CONSENT DECREE

EAGAN, United States Magistrate Judge.

The defendant, Envirite Corporation, seeks relief from a consent decree it entered into with the United States Environmental Protection Agency ("EPA") to resolve claims brought against Envirite for alleged violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* In support of its motion, Envirite asserts that the EPA wrongfully failed to produce potentially exculpatory documents which, if given to Envirite, would have led to litigation of the action rather than the entry of a consent decree. The court agrees that the government wrongfully withheld potentially exculpatory documents, and therefore grants Envirite's motion in accordance with the following memorandum and order.

## FACTUAL BACKGROUND

The parties do not dispute the factual predicate of the defendant's motion. The defendant, Envirite Corporation, operates waste treatment and disposal facilities in four states, including Connecticut. More specifically, Envirite employs a treatment process whereby liquid waste, which is considered hazardous within the meaning of relevant EPA regulations, is neutralized and reduced to a nonhazardous solid residue. Envirite disposes of the solid nonhazardous waste pursuant to a "waste exclusion" issued by the EPA which establishes that the solid waste generated by the treatment process is in fact nonhazardous provided that the potentially hazardous elements of the solid waste remain below certain constituent levels. The entire treatment process is regulated by the RCRA as enforced by the EPA.

In October, 1988, and January, 1989, the EPA took ground samples of the landfill at Envirite's facility at Thomaston, Connecticut as well as "archived" samples of previously treated waste that had been reduced to solid form and disposed in the Thoma-

ston landfill.[1] The EPA had nine of these archived samples tested in its laboratory and found that each sample substantially exceeded the standards for at least one of four detected metals. Envirite's tests of the same samples showed that it was in full compliance with EPA regulations and the waste exclusion issued by the EPA. The EPA and Envirite exchanged the results of their tests with each other in April, 1989.

On May 3, 1989, the EPA, through counsel, filed a two-count complaint against Envirite, alleging violations of the RCRA (Count I) and deviations from established laboratory procedures (Count II). Envirite responded to the complaint by attempting to engage in discussions with the EPA concerning the alleged inaccuracy of the EPA tests. During this period of time after the filing of the complaint, the parties had a good faith agreement to exchange documents, but in July, 1989, Envirite took the additional step of filing a discovery request which would have required that the EPA produce all laboratory test documents. However, the EPA never complied with Envirite's document request because the parties deferred engaging in discovery in order to focus upon settlement negotiations.

In June, 1989, the EPA, concerned that the results of its original test of the Envirite archived samples may be inaccurate, submitted those samples to an independent laboratory for retesting. The independent laboratory tests revealed that only one of the nine samples contained an element in excess of the waste exclusion, and that this exceedence was not nearly as substantial as reported in the original EPA test which gave rise to this action. Despite having the written results of this new test in June, 1989, and despite the filing by Envirite of a production request in July, 1990, no employee of the EPA or its counsel ever submitted a copy of these results to counsel for Envirite prior to the entry of the final consent decree.

The final consent decree, entered into in March, 1990, required Envirite to treat its hazardous waste in a more expensive manner and pay a civil penalty of $60,000.00. Counsel for the EPA proceeded to negotiate the final consent decree with full knowledge that the original EPA test was invalid, and yet did not provide the results of the retest to Envirite. Envirite has paid the civil penalty and apparently has continued to comply with the consent decree.

In August, 1990, Envirite propounded a Freedom of Information Act ("FOIA") request to the EPA, and received 1,800 pages of documents in response. Included in the EPA's response to the FOIA request was an internal EPA memorandum written by an EPA official who investigated the present action against Envirite. In this memorandum, the EPA official stated that the original tests performed on the archived samples by the EPA laboratory were "highly questionable and were ultimately considered invalid." The EPA official went further in the memorandum to state that the EPA agreed to enter into the consent decree "given the weakness in the United States' case (the invalid laboratory results from [the EPA laboratory] and only a small amount of supportable evidence generated by the ... re-analysis ...)." The memorandum also refers to questionable laboratory testing procedures employed by both the EPA laboratory and an independent laboratory, further calling into question the accuracy of the test results.

Based upon the discovery of the above memorandum, and subsequent review of the more accurate test results, Envirite has moved, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to reopen and set aside the consent decree. The EPA, asserting that the test results were available to Envirite prior to the entry of the decree and that they are not exculpatory, opposes that motion.

DISCUSSION

Envirite's claim for relief from the consent decree is premised upon Fed.R.Civ.P.

1. Envirite takes samples of each "batch" of waste that passes through its treatment process, and then stores these samples. These stored samples are referred to by Envirite as "archived" samples.

60(b), which permits courts, upon such terms as are just, to relieve parties from final judgments, including those entered pursuant to consent decrees.[2] The decision to grant relief under Rule 60(b) is left to the sound discretion of the court. *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986). The Second Circuit has "instruct[ed] district courts that 'final judgments should not be lightly opened'.... Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Tetra Sales (U.S.A.) Div. of Warner–Lambert Co. v. T.F.H. Publications, Inc.*, 727 F.Supp. 92, 93 (S.D.N.Y.1989), *quoting Nemaizer*, 793 F.2d at 61; *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981). Because the relief available under Rule 60(b) is equitable in nature, the court's decision "must be based upon the specific facts and circumstances that are presented." *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248–49, 88 S.Ct. 1496, 1500, 20 L.Ed.2d 562 (1968). The court's decision "must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kozlowski v. Coughlin*, 871 F.2d 241, 246 (2d Cir. 1989).

Envirite has satisfied the court that it is entitled to relief from the consent decree pursuant to Rule 60(b)(3). To obtain relief from a judgment pursuant to 60(b)(3), Envirite must establish by clear and convincing evidence that counsel for the EPA engaged in misconduct. *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir.1989). In this case, the record clearly establishes that counsel for the EPA not only knew that the test results which led to the initiation of this action were invalid, but also possessed documentation showing the tests to be invalid prior to settlement of all pending claims. Yet, government counsel did not provide those results to Envirite, and instead proceeded to enter into a consent decree and to collect a $60,000.00 penalty from Envirite to settle claims premised upon the admittedly invalid results. Counsel for the EPA admit in their memorandum that they produced "hard copy of all results, except for the reanalysis data" in question. (EPA's Memorandum at 10). It is worthy of note that the EPA provided to Envirite "hard copy" of the results of a retest performed in July, 1989, which was subsequent to Envirite's submission of its production request; at the time EPA provided this additional documentation, it had within its possession written copies of the exculpatory test results that were not produced. The court finds it extraordinary that government attorneys would withhold such material information and negotiate a settlement without disclosing evidence to a party defendant that establishes that the factual basis for initially bringing an action had been discredited and invalidated.

In defense of their conduct, counsel for the EPA argue that Envirite was aware of the subsequent test results, and that "[d]iligence on the part of the defendant would have resulted in their obtaining the results of that sampling." (EPA's Memorandum in Opposition at 2). It is undisputed that, subsequent to EPA's obtaining of the written retest results, Envirite propounded a document request that encompassed those written results. Although that request was never formally complied with by EPA, Envirite did engage in mutual exchanges of documents with Envirite. That government counsel chose to produce only those documents which supported EPA's claims and to withhold documents which cast doubt upon the underlying tests giving rise to those claims is clearly misconduct. By

**2.** Rule 60(b) provides that relief from a judgment or order may be grounded upon any of the following:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial ...; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

filing a document request and engaging in a good faith exchange of documents, Envirite acted diligently, and EPA counsel's argument to the contrary is, at best, disingenuous; indeed, it was government counsel who failed to act diligently by not producing the results of the retest in question.

Finally, government counsel asserts that the test results in question are not exculpatory, and therefore relief from the consent decree is unnecessary. However, the test results and related materials that were withheld from Envirite cast doubt upon the test processes employed by EPA and the independent laboratories, given the wide disparity among the findings of the respective laboratories. By EPA's own admission, as recited in the internal memorandum referred to above, the withheld test results showed that the case against Envirite was "weak." For government counsel to withhold such information clearly constitutes misconduct. The court finds it disturbing that it apparently needs to remind government counsel of the special role they play in the administration and enforcement of complex regulatory schemes, but nonetheless feels compelled to refer counsel to Canon 7 of the Code of Professional Responsibility and Rule 3.4.(d) of the Rules of Professional Conduct.[3]

CONCLUSION

For the foregoing reasons, the court finds that, in the interest of justice, the consent decree entered in this matter must be vacated; Envirite's motion to reopen and set aside the consent decree (document no. 22) is GRANTED. However, because there remains a dispute over the validity of the EPA's claims, the court will not dismiss this action. Litigation of this matter will proceed consistent with the following order.

ORDER

For the foregoing reasons, it is hereby ORDERED:

1. That the clerk of the court restore this case to active status;

2. That, within thirty days of receipt of this memorandum and order, the United States Environmental Protection Agency return to Envirite the sum of $60,000.00 plus interest at the rate of 5% per annum;

3. That the EPA publish a correction notice in its *Enforcement Accomplishments Report* stating that the Consent Decree in this matter has been vacated; and

4. That, within thirty days of receipt of this memorandum and order, counsel for the EPA and Envirite report on the status of this case, including the need for conducting discovery, filing dispositive motions, and whether the parties are interested in engaging in settlement discussions. This report should take the form of a letter and be sent to the Honorable Ellen B. Burns, U.S.D.J.

Any objections to this report and recommendation must be filed with the Clerk of Courts in accordance with 28 U.S.C. § 636, Rule 72 of the Federal Rules of Civil Procedure and Rule 2 of the Local Rules for United States Magistrates.

Dated at Hartford, Connecticut this 3rd day of April, 1991.

---

3. Having found that Envirite is entitled to relief under Rule 60(b)(3), the court need not address Envirite's other claims.